749 P.2d 1111

**STATE of New Mexico, ex rel. Paul KLINELINE, Petitioner,**

v.

**Hon. H.R. BLACKHURST, District Judge, Respondent.**

**Henry DEATON and Jane Deaton, Plaintiffs–Appellees,**

v.

**Paul KLINELINE and Juanita Klineline, Defendants–Appellants.**

**Nos. 16973, 17062.**

Supreme Court of New Mexico.

Feb. 16, 1988.

Rehearing Denied March 2, 1988.

Robert Schwartz, J. Michael Norwood, Clinical Law Program, Albuquerque, for petitioner and defendants-appellants.

Donald C. Turpen, Eileen Mallon, Albuquerque, for respondent and plaintiffs-appellees.

Hal Stratton, Atty. Gen., Gerald B. Richardson, Sp. Asst. Atty. Gen., Santa Fe, amicus curiae NM Property Division, Taxation & Revenue Dept.

## OPINION

APODACA, Judge.

Defendants Paul and Juanita Klineline, husband and wife (the Klinelines), filed a motion for rehearing, which we granted. The unpublished decision filed on October 28, 1987 is withdrawn, and the following opinion is substituted in its place.

The Klinelines appeal the trial court's judgment in favor of plaintiffs Henry and Jane Deaton, husband and wife (the Deatons). After having purchased certain residential property (residence) from the Property Tax Division of the Taxation and Revenue Department (the Division) at a tax sale, the Deatons filed suit against the Klinelines to eject them from the residence. The trial court, concluding that the sale requirements of the Property Tax Code, NMSA 1978, Sections 7-35-1 to 7-38-93 (Repl.Pamp.1986 and Supp.1987) (the Code), had been complied with, held that the tax sale was valid and that the Deatons were thus the lawful owners.

We disagree with the trial court's holding and reverse its judgment.

After filing this appeal, the Klinelines petitioned this Court for an alternative writ of prohibition or of superintending control. We granted the petition and ordered a stay of proceedings, reserving decision on the question of whether a permanent writ should issue until this appeal was decided. We consolidated the appeal, Cause No. 17,-062, with the permanent writ hearing in Cause No. 16,973.

## FACTS

The Klinelines have been married for forty-one years. For most of the marriage, Mrs. Klineline has been mentally ill, having been diagnosed as a chronic paranoid schizophrenic. She was institutionalized intermittently throughout the 1960s but since then has not been hospitalized, despite her continuing bizzare behavior. One of the manifestations of Mrs. Klineline's illness was her belief that her husband was dead and that Klineline was an imposter posing as her deceased husband.

In 1978, the Klinelines paid off a real estate mortgage against the residence. The property taxes on the residence were included in the monthly mortgage payments, and the mortgage company had been paying the taxes annually. Having paid off the mortgage, the Klinelines became directly responsible for making the tax payments, which they failed to do. The taxes became delinquent for the years 1978 through 1981 inclusive.

The Division, as required by the Code, mailed a certified letter, return receipt requested, to the Klinelines at the residence. The residence was located at the address shown on the most recent tax schedule. The letter notified them of the delinquency and of an imminent sale of the residence. Mrs. Klineline apparently did not answer the front door when the postal carrier attempted delivery of the letter. Presumably, she destroyed the notice or slip left in the mailbox, which informed the Klinelines of the attempted delivery, without telling Klineline, "the imposter." The Division later received the return receipt form and the certified letter marked "unclaimed." In addition to mailing the certified letter to the Klinelines, the Division posted a "red-tag" notice of delinquency at the residence, pursuant to its own administrative procedures. This "red-tag" did not give the property owner notice of the actual sale, but only of the delinquency. Finally, as required by statute, notice of the sale, together with the description of the property, was published in a daily newspaper. *See* § 7–38–67(B).

## ISSUE

Whether the sale of the residence by the Division was valid under the provisions of the Code, thus conveying title to the purchasers at the tax sale.

Based on our discussion below, we answer this question negatively and conclude that the Division failed to comply with the notice requirements of the Code, thus invalidating the sale.

## DISCUSSION

We need not reach the due process arguments of the parties. See *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) and *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), in which the United States Supreme Court held that a state must provide notice reasonably calculated to apprise interested parties of a pending sale and to afford them an opportunity to present their objections, under the due process clause of the fourteenth amendment. 339 U.S. at 314, 70 S.Ct. at 657. Instead, we address the narrower issue stated above.

■ Because this issue alone controls the disposition of this appeal, it is not relevant to our determination that the Division, in addition to attempting delivery of the certified letter, "red-tagged" the residence and published notice of the sale in a newspaper. Neither of these actions constituted a proper substitution for the notice requirements of Section 7–38–66(C), for our interpretation of the statute does not permit for alternative methods of notice. Instead,

substantial compliance with the express terms of the statute is required for the sale to be valid.

■■■ We first summarize the various principles of statutory construction that are pertinent to our inquiry. In construing a particular statute, a reviewing court's central concern is to determine and give effect to the intent of the legislature. *Smith Mach. Corp. v. Hesston, Inc.*, 102 N.M. 245, 694 P.2d 501 (1985). In determining this intent, we look primarily to the language used, yet may also consider the history and background of the subject statute. *First Nat'l Bank v. Southwest Yacht & Marine Supply Corp.*, 101 N.M. 431, 684 P.2d 517 (1984). This court must give the words used in the statute their ordinary meaning unless the legislature indicates a different intent. *State v. Rodriguez*, 101 N.M. 192, 679 P.2d 1290 (Ct.App.), *cert. denied*, 101 N.M. 189, 679 P.2d 1287 (1984). Although we cannot add a requirement that is not provided for in the statute, *Amerada Hess Corp. v. Adee*, 106 N.M. 422, 744 P.2d 550 (Ct.App.), *cert. denied*, 106 N.M. 405, 744 P.2d 180 (1987), and cannot read into it language that is not there, we do read the act in its entirety and construe each part in connection with every other part to produce a harmonious whole. *General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 703 P.2d 169 (1985). All parts of an act must thus be read together. *New Mexico Hosp. Ass'n v. A.T. & S.F. Memorial Hosps., Inc.*, 105 N.M. 508, 734 P.2d 748 (1987).

■■■ Finally, we must consider the established law on forfeiture, since the statute in question is in substance a forfeiture statute, barring an owner's claim to his property. Forfeitures are not favored by the courts in New Mexico. *State v. Sunset Ditch Co.*, 48 N.M. 17, 145 P.2d 219 (1944). A corollary of the above principle is that statutes are construed strictly against forfeiture. *See State v. Ozarek*, 91 N.M. 275, 573 P.2d 209 (1978). We previously applied this principle in *Hargrove v. Lucas*, 56 N.M. 323, 243 P.2d 623 (1952) (in a quiet title action brought by plaintiff under a tax deed acquired from the state, plaintiff did not lose title by failing to record deed within one year from date) (citing 37 C.J.S. *Forfeitures* § 4 (1943)).

The New Mexico Legislature in 1973 eliminated the former property owner's right of redemption, that is, the right to repurchase. See 1973 N.M. Laws, ch. 258 Section 156, repealing former Act, codified in part at NMSA 1953, Repl.Vol. 10 (1961), Sections 72-8-1 to -52.

■■■ Section 7-38-66 specifies the Division's duties in connection with the sale of property to satisfy delinquent property taxes. Specifically, Section 7-38-66(A) requires that the Division notify the property owner of the impending sale at least twenty days before the tax sale, by certified mail, return receipt requested, at the address shown on the most recent tax schedule. Section 7-38-66(C), which contains the critical language at issue here, provides as follows:

> Failure of the division to mail the notice by certified mail, return receipt requested, *or* failure of the division to receive the *return receipt* shall invalidate the sale; *provided, however,* that the receipt by the division of a return receipt indicating that the taxpayer *does not reside at the address shown* on the most recent property tax schedule shall be deemed adequate notice and *shall not invalidate the sale.* (Emphasis added.)

The statutory language under the new law makes the sale final, subject only to the challenges found in Section 7-38-70(D), which strictly limit the grounds upon which a successful attack on a tax deed issued by the state may be made. One of the grounds is a showing by the taxpayer that the Division failed to mail the notice or to receive the return receipt, as required under Section 7-38-66(C). Section 7-38-70(D), then, is said to represent the "curative feature" under the new law. *See Cano v. Lovato*, 105 N.M. 522, 734 P.2d 762 (Ct.App.1986), *cert. quashed*, 105 N.M. 438, 733 P.2d 1321 (1987). The section further provides that when the property is sold for delinquent taxes, a deed from the Division to the purchaser shall convey all of the former owner's interest if the real

property was sold *substantially in accordance with* the Code, of which Section 7–38–66(C) is a part.

Our task, then, is to construe Section 7–38–66(C) to give effect to the legislative intent. The above summary of Sections 7–38–66(C) and 7–38–70(D), together with the principles of statutory construction noted previously, now permit us to further define and narrow the issue in this appeal as follows: Whether the sale of the residence by the Division was made *substantially in accordance with* the notice requirements of Section 7–38–66(C).

Before the repeal of the right of redemption in 1973, this court consistently held that failure to give or receive notice of taxes due or of the expiration of the time allowed for redemption, would not invalidate a subsequent sale. *Worman v. Echo Ridge Homes Coop., Inc.*, 98 N.M. 237, 647 P.2d 870 (1982); *Bailey v. Barranca*, 83 N.M. 90, 488 P.2d 725 (1971).

Even under the new statute, we have refused to invalidate a tax sale when the property owner's address was incorrectly printed on a certified letter, but the letter was nevertheless delivered to the right address. *See Wine v. Neal*, 100 N.M. 431, 671 P.2d 1142 (1983).

When we decided *Bailey* and *Worman*, however, the notice requirements were significantly different. The pertinent statute on notice, Section 72–8–30, provided in part that "[t]he fact that a notice, mailed in accordance with the provisions of this act was not delivered to the addressee, or was received by a person other than the addressee, shall not affect the validity of any subsequent sale."

We believe that in repealing the redemption provisions, the legislature intended, under the new law, to make the notice requirements stricter to assure proper notice was given, in light of the fact that the property owner no longer had the right to repurchase the property. In this connection, we are mindful that "[t]he law favors redemption." *See State ex rel. McFann v. Hately*, 34 N.M. 86, 88, 278 P. 206, 207 (1929) (citing *Black on Tax Titles* Par. 348 (2d ed. 1893)). We have held that redemption statutes must be construed liberally in favor of the landowner. *Kershner v. Sganzini*, 45 N.M. 195, 113 P.2d 576 (1941).

Bearing in mind what we have discussed above, especially our discussion on long-recognized principles of statutory construction, forfeiture, and redemption, let us now examine closely the provisions of Section 7–38–66(C). For the sake of clarity, we divide the section into two parts: the first part is the wording used before the phrase "provided, however"; the second part is the wording used after that phrase.

In the first part, which contains two requirements, it is clear that, under the first requirement, the sale is invalidated if the Division fails *to mail* the notice by certified mail, return receipt requested. The Division complied with this requirement. The next question is obvious: Did the Division comply with the second requirement, which provides that "failure of the division *to receive the return receipt* shall invalidate the sale"? (Emphasis added.) Does this provision mean that if the receipt *form* is returned to the Division, *for whatever reason*, the requirement has been complied with? If this is so, then under the facts of this appeal, the requirement was met, because the Division did receive the return receipt form marked "unclaimed." We conclude, however, for the two interrelated reasons noted below, that this requirement was not met.

First, the provision uses the phrase "return *receipt*," not "return receipt *form*." We conclude that had the legislature intended to require only the receipt by the Division of the receipt *form*, it simply would have used the word *form*. Its failure to do so leads us to the conclusion that by the use of the phrase, the legislature not only contemplated the giving of notice under the first requirement, but at the very least, actual delivery of such notice to the taxpayer or someone authorized to accept delivery, under the second requirement, with such delivery being evidenced by a receipt verifying that some person signed for the letter and *received* it. Our holding is reinforced by our discussion below.

Second, if the legislature had intended the phrase "return receipt" in the first part to mean "return receipt *form*," why did the legislature find it necessary to include the second part? We submit that the second part has significance and meaning only if we interpret the first part of the statute as noted in the previous paragraph. We will presume that the legislature, by incorporating the second part into the statute, intended it to have meaning and not be superfluous. If given meaning, then of necessity, we are required to construe the first part as noted above. If we held otherwise, the two parts would be redundant, for the second part necessarily would be included already in the second requirement of the first part. Thus, under our construction, the second part provides the *only* exception to an otherwise invalidated sale under the first part: the sale shall not be invalidated if the Division receives the receipt "indicating that the taxpayer does not reside *at the address shown*." That exception did not occur under the facts of this appeal—the Division did not receive the return receipt showing that the Klinelines did not reside at the address. Instead, it received the receipt form showing that the letter had been "unclaimed." The Klinelines had not moved from the residence without leaving a forwarding address. If they had done so, then, and only then, would this event have triggered application of the second part. We conclude that this construction of the statute is both sound and proper, based on our discussion and analysis.

The Deatons, in opposing the motion for rehearing, rely on *Cano v. Lovato,* claiming that case held "receipt by the Department of return receipt showing 'unclaimed' to constitute compliance with the statute and to comprise adequate notice." They are incorrect in so contending. Those were simply not the facts in that case. What *Cano* held was that return of the notice of the pending tax sale to the Division, with a notation that the taxpayer did not reside at the address shown, did not invalidate the sale. That holding clearly was based on the validation exception language found in the second part of Section 7–38–66(C). Nothing in the discussion of the facts in

*Cano* indicates that the letter was returned with the notation "unclaimed" as argued.

## CONCLUSION

We conclude that sale of the residence was invalidated by the express provisions of Sections 7–38–66(C) and 7–38–70(D), and that such sale was not made substantially in accordance with the provisions of Section 7–38–66.

The trial court's judgment for the Deatons is reversed, and the case is remanded with instructions to void the tax sale. The Klinelines shall be awarded costs of appeal.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and SOSA, WALTERS and RANSOM, JJ., concur.