858 P.2d 1282

**Richard CONNELLY and Mary Jane Connelly, Plaintiffs,**

v.

**Gayle M. WERTZ and Jane M. Wertz, husband and wife, Involuntary Plaintiffs–Appellees,**

v.

**Ronald L. HIBDON and Carolyn R. Hibdon, Defendants–Appellants.**

No. 13422.

Court of Appeals of New Mexico.

July 28, 1993.

Michael Allison, Albuquerque, for defendants-appellants.

Dan A. McKinnon, III, Marron, McKinnon & Ewing, Albuquerque, for involuntary plaintiffs-appellees.

## OPINION

PICKARD, Judge.

This case involves a tax sale. *See* NMSA 1978, § 7–38–70 (Repl.Pamp.1990). Section 7–38–70(B) provides that the deed from the state to the buyer "conveys all of the former property owner's interest in the real property as of the date the state's lien for real property taxes arose ... subject only to perfected interests in the real property existing before the date the property tax lien arose." Section 7–38–70(C) provides that "After two years from the date of sale, neither the former real property owner shown on the property tax schedule as the delinquent taxpayer nor anyone claiming through him may bring an action challenging the conveyance." The issues we must decide in this case are (1) whether a seller under a real estate contract is a "former real property owner," (2) whether a seller under a real estate contract holds a "perfected interest," (3) whether the seller under the real estate contract is barred by the two-year statute of limitations in Section 7–38–70(C) from challenging the conveyance, and (4) whether the trial court erred in not barring the seller's cause of action under the doctrines of laches or equitable estoppel.

In affirming the trial court's decision, we hold that the trial court properly deter-

mined that (1) the seller under a real estate contract is not a former real property owner; (2) the seller holds a perfected interest in the property by virtue of recording his interest pursuant to the Recording Act, *see* NMSA 1978, §§ 14–9–1 & –3 (Repl. Pamp.1988); (3) the two-year statute of limitations does not apply; and (4) the doctrines of laches and equitable estoppel do not require a reversal.

## FACTS

Appellees, the Wertzes (Sellers), sold a tract of land and a mobile home to the Connellys (Purchasers) under a real estate contract dated June 19, 1980. Purchasers duly recorded the contract shortly thereafter. The terms of the contract required Purchasers to be responsible for the real property taxes and for assessing the property in their names. In addition, the contract permitted Sellers to terminate the contract and declare a forfeiture should Purchasers fail to make their installment payments to Sellers.

Although Purchasers assessed the property in their names for 1981, they did not pay the taxes. Due to the 1981 tax delinquency, the State of New Mexico sold the property at a tax sale to Appellants, the Hibdons (Tax Sale Purchasers). The state gave notice of a public auction of the property in 1985. Tax Sale Purchasers acknowledge that they examined the chain of title prior to the tax sale and were aware of Sellers' recorded interest in the property.

The state sent notice of the impending tax sale to Purchasers and Sellers at their last known addresses; however, the notices were returned for lack of current addresses. Notice was also published in local papers. Sellers contend that they were not aware of the impending tax sale. The tax sale was concluded in 1985. Purchasers nonetheless continued to make the installment payments to Sellers until March 1987.

In May 1988, Sellers sent Purchasers and Tax Sale Purchasers demand letters notifying them of the delinquency in the install-

ments and offering them an opportunity to cure the delinquency or face default. On July 7, 1988, an affidavit of default was recorded, and the interests of Purchasers and Tax Sale Purchasers were forfeited to Sellers. Purchasers subsequently defaulted in this case, disclaiming any interest in the subject real property, and are therefore not parties to this action. The suit below was one to quiet title, and the trial court ruled in Sellers' favor. Tax Sale Purchasers appeal.

## FORMER REAL PROPERTY OWNER

Tax Sale Purchasers contend that pursuant to Section 7–38–70, Sellers are "former real property owners" rather than holders of a "perfected interest" in the subject property. Tax Sale Purchasers' argument appears to be two-fold: (1) both the seller and the purchaser under a real estate contract retain an ownership interest in the property, *see Marks v. City of Tucumcari*, 93 N.M. 4, 595 P.2d 1199 (1979); and (2) Sellers were responsible for the delinquent 1981 taxes, pursuant to the terms of the contract. We do not find Tax Sale Purchasers' arguments persuasive.

■ Tax Sale Purchasers' reliance on *Marks* for the proposition that a seller's interest in a real estate contract constitutes an ownership interest in the real property is misplaced. *Marks* stands for the principle, long established in New Mexico, that the seller's interest in a real estate contract is personalty, not realty:

> In New Mexico the rule is that a *vendee*, under an executory contract for the sale of realty, acquires an equitable interest in the property. By application of the doctrine of equitable conversion, the *vendee* is treated as the owner of the land and holds an interest in real estate. On the other hand, the *vendor* holds the bare legal title as a trustee for the vendee. The *vendor's* interest is considered personalty.

*Id.* at 5, 595 P.2d at 1200. Furthermore, the seller's personalty interest is a security

interest. *Id.* at 6, 595 P.2d at 1201 (purchaser acquires and owns the land as equitable owner; seller merely holds legal title to the land in trust as security for the purchase price) (quoting *Mesich v. Board of County Comm'rs,* 46 N.M. 412, 416–17, 129 P.2d 974, 976 (1942)); *see Bank of Santa Fe v. Garcia,* 102 N.M. 588, 590–91, 698 P.2d 458, 460–61 (vendor's interest in real estate contract is personalty rather than realty and therefore a judgment lien cannot attach to vendor's legal title) (Ct. App.), *cert. denied,* 102 N.M. 613, 698 P.2d 886 (1985); *see also Garcia v. New Mexico Real Estate Comm'n,* 108 N.M. 591, 594–95, 775 P.2d 1308, 1311–12 (Ct.App.), *cert. denied,* 108 N.M. 624, 776 P.2d 846 (1989); *Cano v. Lovato,* 105 N.M. 522, 529, 734 P.2d 762, 769 (Ct.App.), *cert. quashed,* 105 N.M. 438, 733 P.2d 1321, *and cert. denied,* 104 N.M. 246, 719 P.2d 1267 (1986).

■ Tax Sale Purchasers' second argument is essentially a sufficiency of the evidence argument attacking the trial court's finding that the terms of the real estate contract required Purchasers to assess the property in their own names and pay all the real property taxes on the property. Tax Sale Purchasers' argument is not persuasive because the copy of the contract submitted as evidence as Plaintiffs' Exhibit 1 specifies that "Owner undertakes and agrees to pay all taxes up to and including Second half of 1979" and that "Purchaser agrees to assess said real estate for taxation to himself for the year 1981, and, thereafter, pay all taxes and assessments." In addition, witness Larry Thorp, Bureau Chief of the Delinquent Property Tax Division of the Department of Taxation and Revenue, testified that according to the county's tax list where the subject property was located, Purchasers were the assessed property owners and Sellers' interest was one by virtue of the real estate contract. Therefore, there is sufficient evidence to support the trial court's determination that Purchasers, rather than Sellers, were responsible for paying the taxes in 1981 and that Purchas-

ers had the property assessed in their names. *See* IV Department of Taxation & Revenue P.T.D. Regulation 35–2(F):1 (1983) (defining "owner" in NMSA 1978, Section 7–35–2(F) as including "person who has equitable ownership of property by reason of being the purchaser or buyer of the property under a conditional sale contract"). In reviewing a substantial evidence claim, the question is not whether substantial evidence would have supported an opposite result; it is whether such evidence supports the result reached. *Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App.1986).

■ Accordingly, we hold that Sellers' interest in the real estate contract is personalty, not realty, and acts as security for the purchase price. Therefore, Sellers do not fall within the meaning of "former real property owners" in Section 7–38–70.

## PERFECTED INTEREST

Tax Sale Purchasers contend that the trial court erred in classifying Sellers' interest as a perfected interest under Section 7–38–70(B). First, Tax Sale Purchasers argue that such an interpretation is contrary to the policy behind statutes regarding tax deeds, which is to give a measure of certainty and security to tax titles. *See First Nat'l Bank in Albuquerque v. State,* 77 N.M. 695, 699, 427 P.2d 225, 227 (1967). Tax Sale Purchasers also assert that the tax deed issued to them by the state conveys title to the land free of any encumbrances because the tax deed conveys " 'a new and paramount title in fee simple absolute, striking down all previous titles and interests in the property.' " *Worman v. Echo Ridge Homes Coop., Inc.,* 98 N.M. 237, 239, 647 P.2d 870, 872 (1982) (quoting *Bailey v. Barranca,* 83 N.M. 90, 92, 488 P.2d 725, 727 (1971)).

■ We agree that one policy behind the new property tax code is to " 'clothe tax titles with a measure of certainty and security.' " *Cano,* 105 N.M. at 527, 734 P.2d at

767 (quoting *Bailey*, 83 N.M. at 92, 488 P.2d at 727). However, the clear and unambiguous language of Section 7–38–70(B) also protects holders of certain perfected interests in the tax sale property and limits the rights conveyed to the tax sale purchasers in the tax deed by making them "subject ... to perfected interests in the real property existing before the date the property tax lien arose." Therefore, we do not find Tax Sale Purchasers' first argument dispositive of this issue.

In support of their second argument, Tax Sale Purchasers rely on *Worman* for the proposition that their tax deed is free of any encumbrances, including whatever ownership interest belonged to Sellers. *See Worman*, 98 N.M. at 239, 647 P.2d at 872. However, the applicable statutes in *Worman* were the former redemption and repurchase statutes, NMSA 1953, §§ 72–8–9 & –31, which were subsequently repealed. Therefore, Tax Sale Purchasers' reliance on the language in *Worman* to suggest that all prior interests in the tax sale property are extinguished by issuance of a tax deed is misplaced and is not compatible with Section 7–38–70.

Sellers contend that their security interest in the subject property is a perfected interest for the purpose of Section 7–38–70 because (1) Sellers duly recorded their interest under Sections 14–9–1 and –3, thus perfecting their interest; (2) as testified to by witness Thorp, the long-standing policy of the Taxation and Revenue Department is to treat recorded real estate contracts as perfected interests; and (3) courts should give persuasive weight to long-standing administrative construction of statutes by the agency charged with administering the statutes because the more long-standing the interpretation absent legislative amendment, the more likely the agency's interpretation reflects the legislature's intent. *See In re Application of Sleeper*, 107 N.M. 494, 498, 760 P.2d 787, 791 (Ct.App.), *cert. quashed*, 107 N.M. 413, 759 P.2d 200 (1988).

■ We find Sellers' arguments persuasive for the most part, although we ques-

tion how much weight we should give to an asserted policy of an administrative agency that is not evidenced by regulations or formal rulings. *See State ex rel. Castillo Corp. v. New Mexico State Tax Comm'n*, 79 N.M. 357, 360, 443 P.2d 850, 853 (1968) (longstanding dereliction of duties by administrators is not to be equated with "long-standing interpretation"). According to *Black's Law Dictionary*, a "perfect instrument" is defined as follows: "An instrument such as a deed or mortgage is said to become perfect or perfected when recorded (or registered) or filed for record, because it then becomes good as to all the world." *Black's Law Dictionary* 1137 (6th ed. 1990). A real estate contract involves a writing concerning the sale of land and thus falls under New Mexico's recording act. *See* §§ 14–9–1 & –3; *see also D'Avignon v. Graham*, 113 N.M. 129, 135, 823 P.2d 929, 935 (Ct.App.1991) (lien on father's real and personal property becomes perfected under NMSA 1978, Section 40–4–15 (Repl.Pamp.1989) when filed for record with the office of the county clerk where the property is situated). Accordingly, we hold that Sellers' interest in personalty in the real estate contract is a perfected interest under Section 7–38–70 and when Tax Sale Purchasers acquired their tax deed from the state, they took it subject to Sellers' perfected interest.

## STATUTE OF LIMITATIONS

■ As we stated above, Sellers are not former real property owners for the purpose of Section 7–38–70. Tax Sale Purchasers contend that Sellers are people claiming through a real property owner and, thus, the two-year statute of limitation in Section 7–38–70(C) applies. However, Tax Sale Purchasers cited no authority in support of their contention that Sellers are claiming through Purchasers and therefore should be classified as former real property owners under Section 7–38–70. Issues unsupported by cited authority will not be considered on appeal. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330

(1984). Therefore, for purposes of this case, we hold that Sellers are not people claiming through owners. According to the plain language of Section 7–38–70(C), in order for the two-year statute of limitations to apply, Sellers either had to be owners or had to be claiming through an owner. Because we have held that they are neither, we hold that Sellers are not barred by the two-year statute of limitations.

## LACHES AND ESTOPPEL

Tax Sale Purchasers assert that Sellers should be barred from bringing this suit by virtue of the application of the doctrines of laches and equitable estoppel. We do not find Tax Sale Purchasers' argument persuasive. The burden was on Tax Sale Purchasers to establish the facts necessary to support their claims. *In re Estates of Salas*, 105 N.M. 472, 475, 734 P.2d 250, 253 (Ct.App.1987). In the context of this case, among the elements that Tax Sale Purchasers had to establish were that they lacked notice that Sellers would assert their rights and that they were prejudiced by the delay in Sellers' actions. *Id.; Garcia v. Garcia*, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991). In addition, Tax Sale Purchasers had to show that they relied on Sellers' lack of action and that such reliance was reasonable. *See Gonzales v. Public Employees Retirement Bd.*, 114 N.M. 420, 427, 839 P.2d 630, 637 (Ct.App.), *cert. denied*, 114 N.M. 227, 836 P.2d 1248 (1992). In light of the following facts, the trial court in this case could have found that Tax Sale Purchasers failed to meet their burden of proving the applicability of either laches or estoppel: (1) Tax Sale Purchasers were fully aware of the fact that Sellers held a recorded security interest in the property sold at the tax sale; (2) upon affirmance of the trial court's decision, a provision in the trial court's conclusions of law requires Sellers to reimburse Tax Sale Purchasers "upon presentation of appropriate receipts [for] all sums paid by [Tax Sale Purchasers] of taxes on the real property in question"; (3) Tax Sale Purchasers should have known that Sellers were unaware of the tax sale; and (4) Sellers acted reasonably promptly after they learned of the sale and learned that Purchasers were not going to make further payments on the real estate contract. Moreover, Tax Sale Purchasers have failed to argue any specific grounds for prejudice. *See In re Estates of Salas*, 105 N.M. at 475, 734 P.2d at 253; *Garcia*, 111 N.M. at 588, 808 P.2d at 38. Accordingly, we conclude that the doctrines of laches and estoppel do not require a reversal.

## CONCLUSION

We affirm the judgment of the trial court.

IT IS SO ORDERED.

BIVINS and HARTZ, JJ., concur.