867 P.2d 412

**SOUTHWEST LAND INVESTMENT, INC., a New Mexico corporation, Plaintiff–Appellant,**

v.

**Gerald W. HUBBART and Carolyn G. Hubbart, Defendants–Appellees.**

No. 20,976.

Supreme Court of New Mexico.

Nov. 24, 1993.

Rael and Sanchez, James Lawrence Sanchez, Los Lunas, for appellant.

Antoinette Sedillo–Lopez, Charles Dumars, Albuquerque, for appellees.

Tom Udall, Atty. Gen., Frank D. Katz, Sp. Asst. Atty. Gen., Santa Fe, for amicus curiae Taxation & Revenue Dept. of New Mexico.

## OPINION

RANSOM, Chief Justice.

Southwest Land Investment sued Gerald and Carolyn Hubbart to quiet title to approximately ten acres of land. The trial court denied Southwest's motion for summary judgment and granted the Hubbarts' cross-motion for summary judgment. Southwest appeals from the grant of the cross-motion for summary judgment. We affirm.

*Facts.* In 1982, Southwest sold property to John and Robin Wallner pursuant to a real estate contract, which was properly recorded. According to the terms of the contract the Wallners agreed to pay the applicable property taxes. In January 1987, the Wallners failed to pay the property taxes and those taxes became delinquent. Pursuant to the Property Tax Code, NMSA 1978, §§ 7–35–1 to –38–93 (Repl.Pamp.1990 & Cum.Supp. 1992), the Taxation and Revenue Department sent notice to Southwest and the Wallners that the property was to be sold at a tax sale. Both parties had actual notice of the sale.

In December 1991, the Hubbarts bought the property at the tax sale. The tax deed contained a clause that stated that the deed was conveyed subject to "perfected interests in the real property existing before the date the property tax lien arose." The following April, Southwest declared a forfeiture against the Wallners because they failed to make the 1987 payments on the real estate contract. After their default, the Wallners gave Southwest a special warranty deed purporting to reconvey all legal and equitable title in fee simple absolute to Southwest. Southwest then sued the Hubbarts to quiet title to the property and claimed in a motion for summary judgment that it had legal title to the land by virtue of the special warranty deed or, in the alternative, that it had a perfected interest in the land under the recorded real estate contract. The Hubbarts responded in a cross-motion for summary judgment that Southwest was an "owner" under the Property Tax Code and that the tax deed conveyed all of Southwest's interests in the land to them. The trial court held that Southwest was an owner under the Property Tax Code and that its interests in

the real property were conveyed to the Hubbarts with the tax deed.

*Issues.* This Court must decide whether the vendor under a real estate contract is an "owner" of property under the provisions of the Property Tax Code. Further, we must determine what effect a tax sale held pursuant to the Code has on the vendor's interests in the real property.

*The vendor under a real estate contract is an owner of the land for purposes of the Property Tax Code.* In order for us to determine properly the rights of the parties in this case we must first determine whether Southwest was an "owner" under the Property Tax Code. Our Court of Appeals recently addressed this question in a case where certiorari was not sought. There the Court determined that a vendor was not an owner but merely a holder of a perfected interest. *See Connelly v. Wertz,* 115 N.M. 803, 858 P.2d 1282 (Ct.App.1993). The Court based its holding on the proposition that the vendee is the owner of the property under equitable conversion and the vendor holds only "bare legal title as a trustee for the vendee." *See id.* at 805, 858 P.2d at 1284 (quoting *Marks v. City of Tucumcari,* 93 N.M. 4, 5, 595 P.2d 1199, 1200 (1979)). In its opinion, however, the Court did not address the fact that the Code expressly defines "owner".

The Property Tax Code defines "owner" as "the person in whom is vested *any title* to property." Section 7–35–2(F) (emphasis added). "In interpreting and applying statutes, we must determine and effectuate the intent of the legislature, using the plain language of the statute as the primary indicator of legislative intent." *V.P. Clarence Co. v. Colgate,* 115 N.M. 471, 473, 853 P.2d 722, 724 (1993) (citation omitted). We must follow the legislature's intent as evidenced by a legislative definition unless that definition results in an unreasonable classification. *See County of Los Alamos v. Johnson,* 108 N.M. 633, 634, 776 P.2d 1252, 1253 (1989). In this case, the words "any title" clearly express the legislature's intent to include a vendor in a real estate contract within the definition of "owner".

It has long been held that the legislature is presumed to know the law in existence at the time it enacts legislation. *See State ex rel. Maryland Casualty Co. v. State Highway Comm'n*, 38 N.M. 482, 488, 35 P.2d 308, 312 (1934). It has also long been held that a vendor holds legal title to land under a real estate contract. *See Mesich v. Board of County Comm'rs*, 46 N.M. 412, 416, 129 P.2d 974, 976 (1942); *see also Reardon v. Alsup (In re Anthony)*, 114 N.M. 95, 98, 835 P.2d 811, 814 (1992). Because a vendor holds legal title and because the Property Tax Code defines "owner" as the holder of *any* title, the vendor under a real estate contract is an "owner" under the Code. To the extent that *Connelly v. Wertz* is inconsistent with this holding, it is hereby overruled.

*Effect of the tax sale on Southwest's interests in the real property.* The Property Tax Code states that a deed secured pursuant to a tax sale "conveys all of the former property owner's interest in the real property ... subject only to perfected interests in the real property existing before the date the property tax lien arose." Section 7–38–70(B). Southwest claims that it has a perfected interest in the land pursuant to the recorded real estate contract and that the Hubbarts bought the land subject to this interest.

■ —*Southwest's interests in the land.* As a vendor under a real estate contract, Southwest held several interests in the real property in question here. Primarily, Southwest had a legal interest in the title to the land, *see Mesich*, 46 N.M. at 416, 129 P.2d at 976, a reversionary interest in the property, *see Timberlake v. Southern Pac. Co.*, 80 N.M. 770, 773, 461 P.2d 903, 906 (1969), and an equitable personalty interest in the contract secured against third parties by a lien on the real estate, *see Marks*, 93 N.M. at 5, 595 P.2d at 1200. The legal title and reversionary interests are based upon Southwest's ownership of the land. The personalty interest is based upon Southwest's position as vendor in the real estate contract. *See id.*

· ■ —*Southwest's legal title and reversionary interests were conveyed to the Hubbarts by the tax deed.* Under Section 7–38–70(B), all of Southwest's interests in the real property were conveyed to the Hubbarts by the tax deed because Southwest is a "former property owner." Thus, Southwest's legal title to the property was conveyed to the Hubbarts because legal title is clearly an interest in real property. Further, Southwest lost its reversionary interest in the property because it lost legal title to the land. *Cf. Prince v. Charles Ilfeld Co.*, 72 N.M. 351, 355, 383 P.2d 827, 830 (1963) (stating that party retained its reversionary interest until it transferred title to another party). The only question that remains is whether Southwest lost its personalty interest in the real property.

—*The Hubbarts did not take the tax deed subject to Southwest's perfected interest in the property.* Southwest contends that the Hubbarts accepted the tax deed subject to its perfected personalty interest in the real property. There can be little doubt that Southwest held a perfected interest that is classified as personalty. *See Marks*, 93 N.M. at 5, 595 P.2d at 1200. Further, there can be little doubt that this personalty interest was also an interest in real property. *See In re Anthony*, 114 N.M. at 98, 835 P.2d at 814. The question remains, however, whether under the Property Tax Code the Hubbarts accepted the tax deed subject to Southwest's perfected interest in real property.

We reach this quandary because the Property Tax Code states that the tax deed "conveys all of the former property owner's interest in the real property" but also states that the tax deed purchaser takes the deed "subject only to perfected interests in the real property existing before the date the property tax lien arose." Section 7–38–70(B). In this case, Southwest is a former property owner but is also a holder of a perfected interest that existed before the property tax lien arose. To resolve this apparent conflict we must interpret the statute to find its true meaning.

Our interpretation of the statute is governed by certain canons. As stated above, "[i]n interpreting and applying statutes, we must determine and effectuate the intent of the legislature, using the plain language of the statute as the primary indicator of legislative intent." *V.P. Clarence Co.*, 115 N.M.

at 473, 853 P.2d at 724 (citations omitted). "In the absence of clear and express legislative intent to the contrary, the words used in the statute must be given their ordinary meaning, and the language of the statute is conclusive." *In re Anthony,* 114 N.M. at 99, 835 P.2d at 815.

 In this case, the Property Tax Code states that *"all* of the former property owner's *interest in the real property"* is conveyed. The legislature did not limit the word "all". The second phrase states that the tax deed is accepted "subject only to perfected interests *in the real property."* The legislature chose to use the same language in both the first and second clauses. Reading these clauses together and giving them their plain meaning, we must hold that Southwest's perfected security interest in the property did not survive the conveyance by the tax deed. Southwest was an owner under the Code and its perfected security interest was an interest "in the real property." Even though the interest may have been perfected, because the interest was "in the real property" and because Southwest was an owner, the interest was conveyed along with all of Southwest's other interests in the property.[1]

—*Owners can still protect their interests in real property.* Prior to 1973 owners could protect their interests in property to be sold at a tax sale either by exercising a right of redemption within two years from the forfeiture or by repurchasing the property at the tax sale. *See Cano v. Lovato,* 105 N.M. 522, 527, 734 P.2d 762, 767 (Ct.App.), *cert. denied,* 104 N.M. 246, 719 P.2d 1267 (1986), *and cert. quashed,* 105 N.M. 438, 733 P.2d 1321 (1987). The law, however, was amended in 1973, *see* 1973 N.M. Laws ch. 258, and the legislature eliminated the owner's absolute right of redemption. *See State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 736, 749 P.2d 1111, 1115 (1988). In addition, in amending the law the legislature established stricter requirements regarding the state's duty to give notice to interested parties of an impending

tax sale, the purpose of which was to assure that proper notice was given. *See id.*

Since 1973, owners can protect their interests only by paying their taxes once they receive notice of the pending tax sale pursuant to Section 7–38–66(A) of the Property Tax Code, or by challenging the validity of the tax sale pursuant to Section 7–38–70(D) after the sale has actually taken place. We believe that these avenues are sufficient to protect an owner's interests in land, especially considering the stricter notice requirements. Our belief is supported by the fact that Section 7–38–70 is a curative statute that "strictly limit[s] the grounds upon which a successful attack on a tax deed issued by the state may be made." *Blackhurst,* 106 N.M. at 735, 749 P.2d at 1114.

*Conclusion.* We hold today that a vendor under a real estate contract is an owner for purposes of the Property Tax Code and, under the plain language of Section 7–38–70(B), all of the owner's rights in the real property are conveyed by a tax deed issued pursuant to a proper tax sale. Therefore, the ruling of the district court is affirmed.

**IT IS SO ORDERED.**

BACA and FRANCHINI, JJ., concur.

---

1. We do not address the question of Southwest's contract rights against the Wallners, personally, and do not intend to imply that this interest is an owner's interest in real property that is conveyed by the tax deed.