2006-NMCA-036

131 P.3d 687

Socorro Sandra **CADENA, Shannon Horst, Orlando Olivas, the South Valley Coalition of Neighborhood Associations, and the Southwest Organizing Project, Appellants–Respondents,**

v.

The **BERNALILLO COUNTY BOARD OF COUNTY COMMISSIONERS, Alan B. Armijo, Michael Brasher, Tim Cummins, Steve Gallegos, and Tom Rutherford, Bernalillo County Commissioners, and Southwest Landfill, Llc., Appellees–Petitioners.**

No. 25,381.

Court of Appeals of New Mexico.

Feb. 2, 2006.

New Mexico Environmental Law Center, Douglas Meiklejohn, Eric Jantz, Roderick Ventura, Santa Fe, NM, for Respondents.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Zachary L. McCormick, Arthur D. Me-lendres, Sutin, Thayer and Browne, PC, Kerry Kiernan, Albuquerque, NM, for Petitioners.

## OPINION

VIGIL, Judge.

{1} The Bernalillo County Board of County Commissioners (the Board) and the Albuquerque City Council jointly adopted the Bernalillo County Groundwater Protection Policy and Action Plan (GPPAP) (pronounced gee-pap). The GPPAP prohibits the expansion of a landfill in a "crucial area" to protect underlying groundwater and thereby assure its quality for human consumption and economic uses. The GPPAP also states, "Crucial areas are *defined* in Attachment E and *mapped* in Attachment F." (Emphasis added.) This case requires us to determine the relationship of "crucial areas" as they are "mapped" and "crucial areas" as they are "defined." Specifically, we are asked to make the legal determination of whether a landfill that is located in a "crucial area" on the map attached to the GPPAP prohibits any further inquiry into whether the location of the landfill actually satisfies the "crucial area" definition that is separately set forth in the GPPAP.

{2} On appeal from a decision of the Board, which had concluded that the landfill at issue was not in a crucial area, the district court concluded that the map alone controls the crucial area determination. Alternatively, the district court ruled that the administrative record supports a conclusion that the landfill at issue is in a crucial area as defined in the GPPAP. We granted Southwest's petition for a writ of certiorari to review the district court decision pursuant to Rule 12–505 NMRA.

{3} We conclude that while the map creates a generalized presumption that a landfill is located in a crucial area, it is not conclusive. If the specific landfill location does not meet the criteria set forth in the definitional section, it is exempt from the generalized presumption established by the map. We also conclude that the district court acted outside its capacity as an appellate court by engaging in fact-finding when it determined

that the administrative record supports a conclusion that the landfill is in a crucial area as defined in the GPPAP. Finally, because the issue of whether the landfill fits within the GPPAP's definition of "crucial area" is a mixed legal and factual inquiry, and the Board failed to make adequate findings, any meaningful appellate review is not possible. We remand to the district court with instructions to remand to the Board to make findings.

## BACKGROUND

{4} Southwest Landfill, L.L.C., (Southwest) filed an application with Bernalillo County to amend its special use zoning permit to allow an expansion of a construction debris landfill that it operates southwest of Albuquerque. The matter was initially considered by the Bernalillo County Extraterritorial Land Use Commission (ELUC), which denied the application based on a number of grounds, including a determination that the application was inconsistent with the GPPAP's prohibition against landfill expansion in crucial areas. The ELUC relied on the fact that the site is "clearly" within a crucial area zone as depicted by the GPPAP map entitled "Generalized Crucial Areas in Bernalillo County."

{5} Southwest appealed to the Board, which overruled the ELUC and granted the amendment to the special use permit subject to a number of conditions. With respect to the dispute over the site's designated status, the Board simply entered a finding stating that "[t]he landfill is not located in a crucial area as defined by the [GPPAP.]"

{6} Respondents, a coalition of neighboring citizens and community interest groups, appealed the Board's decision to the district court. Acting in its appellate capacity pursuant to Rule 1–074 NMRA, the district court reversed the Board on two alternative grounds. First, the district court ruled as a matter of law that inclusion of the landfill in a crucial area zone as depicted by the Generalized Crucial Area Map conclusively resolves the issue of whether the landfill is in a crucial area. In coming to this conclusion, the district court rejected the view that the GPPAP permits determining whether land is in a crucial area on a parcel-by-parcel basis. Alternatively, if a parcel-by-parcel determination was permissible, the district court concluded that the Southwest landfill location satisfies a crucial area definition, citing certain portions of the administrative record in support of its decision.

## STANDARD OF REVIEW

{7} We employ an administrative standard of review when determining whether a district court, sitting as an appellate court, erred in its review of an administrative decision. *See Gallup Westside Dev., LLC v. City of Gallup,* 2004–NMCA–010, ¶ 10, 135 N.M. 30, 84 P.3d 78. That is to say, we review the Board's decision the same way the district court does when sitting in its appellate capacity to determine if the administrative decision is arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or otherwise is not in accordance with the law. *Id.; see* NMSA 1978, § 39–3–1.1(D) (2005); Rule 1–074(Q). At the same time, we review the GPPAP and the related ordinances de novo, using the same rules of construction that apply to statutes. *See Smith v. Bernalillo County,* 2005–NMSC–012, ¶ 18, 137 N.M. 280, 110 P.3d 496. We look to the plain language as the primary indicator of legislative intent, giving words their ordinary meaning. *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599. We do not read language into the ordinances unless they do not make sense. *Id.* As discussed below, we are interpreting the GPPAP together with a related ordinance. We therefore attempt to harmonize the language of each ordinance and facilitate their respective underlying purposes. *See Pub. Serv. Co. v. N.M. Pub. Util. Comm'n,* 1999–NMSC–040, ¶ 23, 128 N.M. 309, 992 P.2d 860.

## DISCUSSION

{8} We initially consider the legal definition of "crucial area," and then we review the Board's decision in light of our discussion.

### I. Crucial Area Definition

{9} The starting point for our analysis is a review of this Court's decision in an earlier appeal involving this same landfill. In *Atlixco Coalition v. County of Bernalillo,*

1999–NMCA–088, 127 N.M. 549, 984 P.2d 796, Southwest was granted a permit to include municipal waste in addition to the construction debris accepted at the landfill. The permit was challenged on the ground that the Board failed to consider compliance with the GPPAP and the County's Resolution No. 116–86 (Oct. 21, 1986). The Resolution sets forth criteria to consider when reviewing a request for zone map changes and special use applications. *Atlixco Coal.*, 1999–NMCA–088, ¶ 12, 127 N.M. 549, 984 P.2d 796. We concluded that the GPPAP and Resolution No. 116–86 had the force of the law because it had been incorporated into a subsequent ordinance dealing with the disposal of solid waste in the county. *Atlixco Coal.*, 1999–NMCA–088, ¶ 16, 127 N.M. 549, 984 P.2d 796. Referring to Resolution No. 116–86, we noted that "[w]hen invoked, this provision thus imposes substantive and procedural guidelines for any zone map changes and applications for special-use permits." *Atlixco Coal.*, 1999–NMCA–088, ¶ 14, 127 N.M. 549, 984 P.2d 796.

{10} Resolution No. 116–86, provides in pertinent part that, "A proposed land use change shall not be in significant conflict with adopted elements of the Comprehensive Plan or other County Master Plans and amendments thereto including privately developed area plans which have been adopted by the County." *Id.* Ordinance 96–22 explicitly requires compliance with the GPPAP before disposal of solid waste may occur. *Atlixco Coal.*, 1999–NMCA–088, ¶ 16, 127 N.M. 549,

984 P.2d 796. Therefore, we consider whether Southwest's application is "in significant conflict with" the GPPAP. The district court concluded that it is, because the site of the landfill is indisputably within a crucial area as depicted by the map labeled "Generalized Crucial Areas in Bernalillo County." The district court agreed with Respondents' argument that "a parcel-by-parcel determination would negate the protection provided by GPPAP because it would allow removal of properties with the potential to generate contamination." This reasoning, however, reads into the GPPAP language that is not there. If the County wanted the Generalized Map to prohibit a parcel-by-parcel consideration based on the policies of the GPPAP and the procedure set forth in Resolution No. 116–86 and Ordinance 96–22, it could have explicitly so stated. *See Smith*, 2005–NMSC–012, ¶ 23, 137 N.M. 280, 110 P.3d 496 (noting that, if the county intended to place height restriction within a particular zone, it could have expressly so stated).

{11} As indicated, the GPPAP expressly prohibits new landfills or expansion of existing landfills in a crucial area. This achieves one of its stated policies, which is to "prohibit or control releases of substances having the potential to degrade the ground-water quality." The GPPAP then lists nine "Protection Measures" in Section 3, with a stated rationale. The "Protection Measure" that is pertinent to this case and its stated rationale is described as follows:

PROHIBIT OR RESTRICT ACTIVITY IN CRUCIAL AREAS

RATIONALE: Ground water underlying crucial areas must be protected to assure its quality for human consumption and economic uses. Crucial areas are defined in Attachment E and mapped in Attachment F. Potential short-term economic gains associated with hazardous materials, septic tanks, and other pollution threats cannot begin to offset the long-term environmental and economic costs to clean up polluted ground water.

The definition contained in Attachment E is the following:

Crucial areas. An area having one or more of the following characteristics: (1) a modified DRASTIC Index equal to or greater than 100; (2) areas used or likely to be used for public and private water supply; (3) a hydrogeologic setting, such as fractured bedrock, where conditions

may allow the rapid movement of contaminants; or (4) within the 30–year capture zone of a public water-supply well.

{12} The map referred to as Attachment F is entitled, "Generalized Crucial Areas in Bernalillo County," and it is, as suggested by its title, a very generalized map, depicting three large crucial areas that make up well over half of the surface area of Bernalillo

County. No specific parcels of property are identified. The generalized crucial areas are identified as (1) a "Crucial area where groundwater occurs in the Albuquerque ground-water basin"; (2) a "Crucial area where ground water occurs in the Madera Limestone"; and (3) a "Crucial area where ground water occurs in low-flow fractured rocks." The small scale of the map, the failure to identify specific parcels of property, and the broad designation of these categories indicates that they were not intended to conclusively determine whether any specific parcel of property is, in fact, crucial. Furthermore, the definition of "crucial area" in Attachment E is included on the generalized map itself. We therefore agree with Southwest that the definition would be surplusage if the map alone controls what constitutes a crucial area. *See In re Rehabilitation of W. Investors Life Ins. Co.*, 100 N.M. 370, 373, 671 P.2d 31, 34 (1983) ("Statutes must be construed so that no part of the statute is rendered surplusage or superfluous.").

{13} Respondents attempt to counter this result by referring us to the following language found elsewhere in the GPPAP:

> Within crucial areas and wellhead protection areas, certain activities will be prohibited or restricted as detailed in Section 3 of this policy. The regulations will define these areas, identify the restrictions and prohibitions, and appropriately amend the existing ordinances. *Crucial areas in Bernalillo County have been defined (Attachment F [the Crucial Area map]), but this small-scale map and maps of wellhead protection areas need to be refined to parcel specificity and updated as new wells are added.*

(Emphasis added.)

{14} Respondents contend that there are three keys to interpreting this provision. First, they argue that the reference to the small-scale map and the need for refinement contemplates a parcel-by-parcel review only to determine if a specific parcel is in fact in a crucial area and depicted on the generalized map when those properties are located near the edge of the boundaries. Again, we believe that Respondents are reading in language that is not there. The GPPAP could

have simply stated that a parcel-by-parcel review may be necessary where the map is unclear. Second, Respondents argue that only the map can be changed to reflect "parcel specific" changes because the provision only refers to the map and not the definitions in Attachment E when referring to refining its provision to "parcel specificity." We disagree. The definitions themselves are contained on the map of the crucial areas and thus it is inaccurate to refer to the map in isolation without consideration of the definitions that are repeated on the map. Finally, Respondents argue that when the provision states that crucial areas "have been defined" by referring only to the generalized map, this means that the inquiry has been completed, the crucial areas have been defined, and they are on the map. This, however, begs the question before us. In addition, it ignores the fact that the words "have been defined" were written in a document adopted in 1993–94, which contains a time line, indicating that wellhead protection areas and crucial areas would be "designate[d]" in 1997. It also ignores other indications that the special use permit process can be used to remove a specific property from being designated a crucial area. The fact that crucial areas have been broadly designated does not unalterably prevent further review for a specific parcel of property. To the contrary, the language quoted above supports the view that the GPPAP is an evolving document, with the development of wells being of particular concern.

{15} It would not serve the purpose of the GPPAP for an area to be designated as "crucial" when, by the GPPAP's own definition, it is not. When words are defined in the statute, we must interpret the statute according to those definitions, because those definitions reflect what the legislative intent is. *Sw. Land Inv., Inc. v. Hubbart*, 116 N.M. 742, 743, 867 P.2d 412, 413 (1993); *see* 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:07, at 227–28 (6th ed. 2000) ("As a rule a [statutory] definition which declares what a term means is binding on the court."). We therefore agree with Southwest that a two-step inquiry is contemplated. First, a determination is made

whether the subject parcel is located within the boundary of one of the three crucial areas on the generalized map. Second, reading the GPPAP together with Resolution No. 116–86 and Ordinance 96–22, if the property is located within a crucial area, as depicted on the generalized map, the applicant has the burden to show that the site is not a "crucial area" as defined by the detailed definitions set forth in Attachment E, and that the application is otherwise "consistent with the community's general welfare." *Atlixco Coal.*, 1999–NMCA–088, ¶ 14, 127 N.M. 549, 984 P.2d 796. Contrary to Respondent's argument that a parcel-by-parcel determination renders the map "meaningless," this two-step approach harmonizes these otherwise conflicting portions of the GPPAP and provides a more reasoned implementation of its underlying policies. *See High Ridge Hinkle Joint Venture*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (stating that portions of statutes "must be read together so that all parts are given effect"); *Romero v. Valencia County*, 2003–NMCA–019, ¶ 8, 133 N.M. 214, 62 P.3d 305 ("[A] statute is read in its entirety and each part is construed with every other part to achieve a harmonious whole[.]").

## II. The Board's Decision

▮ {16} The GPPAP defines four types of crucial areas in Attachment E. The only dispute in this case is whether the Southwest landfill falls into the second category: "areas used or likely to be used for public and private water supply." The administrative record in this case contains conflicting evidence on the issue, and it is unclear what "area" needs to be considered for making a determination of whether a property fits within this definition of a crucial area. The Board simply made a finding that "[t]he landfill is not located in a crucial area as defined by the [GPPAP]." The district court, after initially ruling that the map controlled, alternatively determined that the administrative record supports a finding that the landfill is in an area that is likely to be used for public and private wells. The district court referenced portions of the administrative record that it believed to support this determination.

{17} In particular, the district court relied on the predictions of city and county staff that they anticipated increased residential development on the southwest mesa and a consequent need for water for which the residents would rely on private wells. In addition, there was testimony by Respondents about a few existing wells in varying numbers of feet from the landfill and predictions about the likelihood of future wells. However, Southwest presented evidence to the Board of an expert hydrologist, whose opinion was that the water quality and depth in the area of the landfill would make the drilling of wells there expensive, underproductive, and uneconomic, and therefore unlikely.

{18} We agree with Southwest that the district court improperly engaged in fact finding, in effect substituting its judgment for that of the Board on the issue of whether the landfill is within a crucial area as defined by the GPPAP. *See Paule v. Santa Fe Bd. of County Comm'rs*, 2005–NMSC–021, ¶ 32, 138 N.M. 82, 117 P.3d 240 (observing rule that reviewing courts "may not substitute their decision for that of the zoning authority and conclude that there is evidence supporting a different conclusion"). In this case, however, we do not believe that a meaningful appellate review can be made absent additional findings from the Board. *See Apodaca v. Payroll Express, Inc.*, 116 N.M. 816, 822, 867 P.2d 1198, 1204 (Ct.App.1993) (noting that appellate court will remand for additional findings when necessary). The definitional section contained in the GPPAP, particularly the determination of what "area" is to be considered, presents a mixed issue of law and fact. The GPPAP's stated rationale for the designation of crucial areas, set forth earlier in this opinion, provides a legal framework for deciding any site-specific "area" definition, but this involves a fact-intensive inquiry that must be set forth in the record. In the absence of such findings on the issue, we find it necessary to remand, after which, if the result is the same, the district court may revisit the "crucial area" issue and the other grounds Respondents raised in their appeal to that court.

## CONCLUSION

{19} For the reasons discussed above, we reverse the district court with instructions to remand to the Board for proceedings consistent with this opinion.

{20} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and LYNN PICKARD, Judge.