748 P.2d 14

**Robert F. VIHSTADT,**
**Petitioner–Appellant,**

v.

**REAL ESTATE COMMISSION OF the**
**STATE OF NEW MEXICO,**
**Respondent–Appellee.**

No. 17031.

Supreme Court of New Mexico.

Jan. 8, 1988.

Ira Robinson, Albuquerque, for petitioner-appellant.

Hal Stratton, Atty. Gen., Marilyn Hebert, Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

SOSA, Senior Justice.

This is an appeal from the district court's order affirming the New Mexico Real Estate Commission's (Commission) decision to revoke Robert Vihstadt's real estate broker's license. We reverse.

The facts preceding the revocation of Vihstadt's license are as follows. On November 16, 1982, Key Realty, Inc., a New Mexico corporation, bought real estate located on the Dietz Farm Road from First National Bank of Lea County for $96,000. On January 11, 1983, Vihstadt, as president of Key Realty, executed a mortgage and note from Security Federal Savings and Loan Association (Security Federal). The mortgage note was amortized over an eight month period, with a balloon payment on the ninth month. Key Realty made the installment payments for February, March, and April.

On April 11, 1983, by a real estate contract, Key Realty sold the Dietz Farm property to Vihstadt and his wife, Leslie Vihstadt, for $137,900. The contract was a wrap-around, providing for a cash down payment of $27,580. The balance of the contract was payable by the Vihstadts assuming the underlying mortgage of $88,000 and paying the seller's equity of $21,820 in monthly installment payments. The Vihstadts never made the cash down payment.

After executing the real estate contract, Vihstadt went to D.L. Smith Company, a New Mexico corporation, engaged in the business of brokering any future promise to pay, such as real estate contracts, deeds of trust, and mortgages. Vihstadt, identifying himself as a real estate broker, hired Nan Smith, owner and operator of the Smith Company, to find a buyer for the real estate contract. Vihstadt furnished Smith with a copy of the contract, some comparables of other nearby properties, a warranty deed, and a special warranty deed. On May 2, 1983, Smith sold the real estate contract to Ronald Rodeman for $20,650. Rodeman was shown all the information Vihstadt had supplied to Smith. Vihstadt paid Smith a commission of $600 for the sale.

After making several payments to Rodeman through Southwest Escrow Company, the Vihstadts defaulted on the real estate contract and also defaulted on the underlying mortgage to Security Federal. Because Security Federal foreclosed on the Dietz Farm, Rodeman lost his investment.

In August 1984, Rodeman filed a complaint with the Commission against Vihstadt. Rodeman's complaint alleged that the Vihstadts owed him money under the real estate contract, that they had repeatedly submitted late payments, that they had defaulted on the underlying mortgage, and that they had never made a cash down payment under the real estate contract. The Commission took action to revoke or suspend Vihstadt's license under NMSA 1978, Section 61–29–12 (Repl.Pamp.1983). On July 18, 1985, the Commission held a hearing. Based on the evidence introduced at the hearing, the Commission ordered that Vihstadt's broker's license be revoked because he had violated Subsections (A), (B), and (K) of Section 61–29–12. The Commission concluded that Vihstadt had made a substantial misrepresentation when he contracted with Key Realty and falsely stated that he had made a cash down payment of $27,580. Moreover, it concluded that Vihstadt had continued in a flagrant course of misrepresentation when he took the real estate contract to Smith who, relying on the cash down payment, sold the contract to Rodeman and that Vihstadt's actions constituted "bad faith, untrustworthiness, impropriety and dishonesty."

Vihstadt appealed the Commission's decision to the district court. On February 19, 1987, District Judge Blackhurst entered an order affirming the Commission's decision in its entirety. This appeal followed.

Vihstadt raises several points of error on appeal. We will consider Vihstadt's first point only because it is determinative of this case. The sole issue on appeal, therefore, is whether the Commission lacked jurisdiction to revoke Vihstadt's license.

Vihstadt contends that the Commission lacked jurisdiction because he was not acting in the capacity of a real estate broker during the event giving rise to the complaint—the sale of the real estate contract. The Commission is authorized to revoke a broker's license if he is found guilty of any of the acts set forth in Section 61–29–12. As stated above, the Commission concluded that Vihstadt had violated Subsections (A), (B), and (K). The specific violations of the statute read as follows:

A. making a substantial misrepresentation;

B. pursuing a continued and flagrant course of misrepresentation, making false promises through agents, salespersons, advertising or otherwise, or using any trade name or insignia of membership in any real estate organization of which the licensee is not a member; [and]

K. any other conduct, whether of the same or different character from that specified in this section, which is related to dealings as a real estate broker or real estate salesperson and which constitutes or demonstrates bad faith, incompetency, untrustworthiness, impropriety, fraud or dishonesty, negligence or any unlawful act.

For the Commission to have jurisdiction, however, the real estate broker must engage in the above enumerated activities while he is acting as a real estate broker as defined in NMSA 1978, Section 61–29–2(A) (Repl.Pamp.1983). That statute provides in pertinent part:

A real estate broker within the meaning of Sections 61–29–1 through 61–29–29 * * * is a person, business association or corporation, who for a salary, fee, commission or valuable consideration lists, sells or offers for sale, buys or offers to buy, or negotiates *the purchase or sale or exchange of real estate* * * * as a whole or partial vocation. (Emphasis added.)

A "broker" is generally defined as "an agent who, for a commission * * * bargains * * * in behalf of his principal as an intermediary between the latter and third persons in transacting business relative to * * * the sale or purchase of any form of property, real or personal * * *." 12 Am. Jur.2d *Brokers* § 1 (1964).

The undisputed facts show that Smith acted as an intermediary between Key Realty and Rodeman. Smith agreed to sell Key Realty's interest in the real estate contract for which she received a commission of $600. Smith was the only person with whom Rodeman dealt with when he purchased the real estate contract. Rodeman never met or spoke to Vihstadt until the Vihstadts defaulted on the contract. Vihstadt did not engage in any activities of selling, or offering to sell, or negotiating the purchase or sale or exchange of real estate or a real estate contract. He was not employed as a "broker"; Smith was the "broker" as is generally defined above.

Moreover, Smith was not engaged in the business of a real estate broker, a person who sells or negotiates the purchase or sale of real estate. Smith was acting as a note broker, a seller of commercial paper. Smith testified that she was in the business of brokering any promise to pay real estate contracts, deeds of trust, mortgages, adjustments, or any future promise to pay. Because Vihstadt was not acting as a real estate broker during the sale of the real estate contract, we conclude that the Commission lacked jurisdiction.

The Commission contends, however, that it had jurisdiction over Vihstadt because he was acting as a "broker" during the sale of the Dietz Farm from Key Realty to the Vihstadts. Despite the Commission's contention, we conclude that Vihstadt was not acting in the capacity of a real estate bro-

ker during the Key Realty/Vihstadts transaction. In fact, no real estate broker was involved in this sale. There was absolutely no real estate broker intermediary between Key Realty, as the seller, and the Vihstadts, as the buyers.

The Commission relies on *Poorbaugh v. New Mexico Real Estate Comm'n*, 91 N.M. 622, 578 P.2d 323 (1978) for the proposition that it has jurisdiction over a real estate broker who is buying or selling property for himself. Although Vihstadt was purchasing property for himself, *Poorbaugh* is not helpful to the Commission. In *Poorbaugh*, we held that the Commission had jurisdiction over a real estate broker who was buying and selling real estate for himself because he held himself out as a broker to a buyer and seller. *Id.* at 623, 578 P.2d at 324. In this case, Vihstadt did not hold himself out as a broker during the Key Realty/Vihstadt transaction. By viewing the substance rather than the form of the transaction, it becomes apparent that Vihstadt was the only party involved in the purchase and sale of the Dietz Farm property, and therefore, there could not have been representations made to another party. Nor, as we stated earlier, was Vihstadt acting as a broker when the Key Realty/Vihstadt real estate contract, an item of personalty—not realty, was sold.

We do not condone any misrepresentations Vihstadt made during the Key Realty/Vihstadt real estate transaction. Certainly, if Vihstadt was convicted for any fraudulent activity, the Commission would have the authority to revoke or suspend his broker's license. *See* NMSA 1978, § 61–29–12(F) (Repl.Pamp.1983). But what is involved in the instant case is Smith's sale of a real estate contract, which is not a real estate transaction, and Vihstadt's tenuous involvement with that sale.

For the foregoing reasons, we reverse the district court.

SCARBOROUGH, C.J., and WALTERS, J., concur.