775 P.2d 1308

**Robert GARCIA and Antonio Garcia, Petitioners–Appellants,**

v.

**NEW MEXICO REAL ESTATE COMMISSION, Respondent–Appellee.**

**Arthur LOPEZ, Juan and Marcella Lopez, Ernest and Doreena Valdez, Pablo and Lila Jaramillo, Tony and Rose Marquez, David and Rhonda Germano, Jesus and Polly Goni, Demetrio Chavez, Sally Chavez, Arturo Chavez, Jose and Rebecca Martinez, Petitioners–Appellees,**

v.

**NEW MEXICO REAL ESTATE COMMISSION, Respondent–Appellant.**

**Nos. 10279 and 10357.**

Court of Appeals of New Mexico.

May 4, 1989.

Certiorari Denied June 16, 1989.

Christopher L. Trammell, Hank Farrah, Albuquerque, for petitioners-appellants Robert and Antonio Garcia.

David Greer, Richard J. Grodner, Prelo & Grodner, P.A., Albuquerque, for petitioners-appellees Arthur Lopez, et al.

Hal Stratton, Atty. Gen., Lyn Hebert, E. Maine Shafer, Jr., Asst. Attys. Gen., Santa Fe, for respondent-appellant New Mexico Real Estate Com'n.

## OPINION

MINZNER, Judge.

These appeals arise from disparate decisions of the district court on claims filed under the Real Estate Recovery Fund Act (the Act). *See* NMSA 1978, §§ 61-29-20 to -29 (Repl.Pamp.1988). In both cases, petitioners obtained judgments against the same licensed real estate salesman, Joe Aqui, for damages resulting from fraudulent transactions. Petitioners were unable to satisfy their respective judgments out of Aqui's property, and they filed suit in 1986 to recover damages under the Act. On the court's own motion, we consolidate these cases for review. *See* SCRA 1986, 12-202(F)(2).

Petitioners filed suit under the Act as it read prior to its amendment in 1987. *See* 1980 N.M.Laws, ch. 82, §§ 1-10. The Act originally provided for suit in district court, *see* 1980 N.M.Laws, ch. 82, § 4(A), while the Act presently provides for claims to be filed with the New Mexico Real Estate Commission (Commission). *See* § 61-29-23(A).

Under the Act, the Commission administers a fund for the benefit of persons who are unable to satisfy judgments obtained against a licensed real estate broker or salesperson based upon particular acts of wrongdoing. Recovery is limited to unsatisfied judgments based upon "any transaction for which a real estate broker's or salesperson's license is required [by law]." § 61-29-23(A); 1980 N.M.Laws, ch. 82, § 4(A).

The Act originally provided for recovery when a person held an unsatisfied judgment "against a state-licensed real estate broker or salesperson based upon fraud, misrepresentation or deceit in any transaction for which a real estate broker's or salesperson's license is required [by law]." *See* 1980 N.M.Laws, ch. 82, § 4(A). The Act currently provides for recovery when a person holds an unsatisfied judgment:

[B]ased upon fraud, knowing or willful misrepresentation or wrongful conversion of funds entrusted to him, which loss arose out of any transaction for which a real estate broker's or salesperson's license is required and arose out of or during the course of a transaction involving the sale, lease, exchange or other disposition of real estate * * * *

*See* § 61–29–23(A). We need not decide in this case whether the change in the Act alters the proof required for recovery.

In *Garcia v. New Mexico Real Estate Commission,* Cause No. CV 86 03841 (*Garcia*), after a hearing on the merits, the trial court denied recovery on two transactions, both of which involved money transferred to Aqui for investment in real estate contracts, on the ground that a real estate license was not required for these transactions. The trial court also made a finding that the Garcias had complied with all the other requirements of the Act. In *Lopez v. New Mexico Real Estate Commission,* Cause No. CV 86 00649 (*Lopez*), the petitioners as well as the respondent moved for summary judgment. The trial court granted the petitioners summary judgment, on the ground that a real estate broker's or salesperson's license was required for the transactions underlying their individual judgments. In *Lopez,* as in *Garcia,* the petitioners had given Aqui money to purchase real estate contracts for them.

We hold that arranging investments in real estate contracts is not a transaction for which a real estate broker's or salesperson's license is required. Thus, under either version of the Act, recovery is not available. Therefore, we reverse the judgment in *Lopez* and affirm the judgment in *Garcia.*

A real estate broker's or salesperson's license is required for a variety of activities, including buying, selling, exchanging, renting, leasing, auctioning, or dealing with options in real estate. *See* NMSA 1978, §§ 61–29–1, –2(A), (B) (Repl.Pamp.1988). Under the law in effect at the time petitioners obtained their judgments against Aqui and petitioned for recovery under the Act, Section 61–29–2(A) provided: " 'real estate' as used in Sections 61–29–1 through 61–29–29 NMSA 1978 shall include leaseholds and other interest less than leaseholds." *See* 1981 N.M.Laws, ch. 148, § 10. As we read the statute, the question in this case is whether Aqui was offering to sell real estate, or was holding himself out as engaged in the business of selling real estate, when he solicited and accepted petitioners' money to invest in real estate contracts. Under our cases, the answer is no.

The New Mexico Supreme Court recently indicated that the sale of a real estate contract is not a real estate transaction. *Vihstadt v. Real Estate Comm'n of N.M.,* 106 N.M. 641, 748 P.2d 14 (1988). In *Vihstadt,* a real estate broker, Vihstadt, engaged a third party, Smith, to find a purchaser for the vendor's interest in a real estate contract under which Vihstadt and his wife were the vendees. Smith located a buyer, Rodeman, who lost his investment when the Vihstadts ultimately defaulted on the real estate contract, and an underlying mortgage was foreclosed. The Commission suspended Vihstadt's real estate license. The district court upheld the suspension. However, the supreme court reversed the district court, determining that the Commission did not have jurisdiction. In making this determination, the supreme court noted that Vihstadt had not acted as a real estate broker under Section 61–29–2(A), since Rodeman did not meet or deal with Vihstadt when he purchased the real estate contract. *Cf. Poorbaugh v. New Mexico Real Estate Comm'n,* 91 N.M. 622, 578 P.2d 323 (1978) (court held that, if plaintiff represented himself as a broker to buyer or seller, Commission had jurisdiction to revoke his license).

However, the court went on to state that Smith also was not engaged in the business of a real estate broker, but rather she had acted as a "note broker, a seller of commercial paper." *Vihstadt v. Real Estate Comm'n of N.M.,* 106 N.M. at 643, 748 P.2d at 16. The court characterized the real estate contract as an item of personalty, not realty, and stated that the sale of a real estate contract is not a real estate transaction. *Id.* at 644, 748 P.2d at 17.

In an earlier case, the supreme court upheld the suspension of a broker's license for wrongful conduct in connection with the vendor's interest in a real estate contract. *Elliott v. New Mexico Real Estate*

*Comm'n,* 103 N.M. 273, 705 P.2d 679 (1985). In *Elliott,* the court determined that, viewing the evidence in the light most favorable to the judgment, there was substantial evidence to support the suspension. Justice Walters dissented, with Justice Sosa concurring in her dissent, stating that the sale of a real estate contract is not a real estate transaction under Section 61–29–2(A).

Although the opinion in *Vihstadt* might be viewed as in conflict with *Elliott, Vihstadt* did not mention *Elliott,* and the two cases do not reach inconsistent results. In *Vihstadt,* unlike *Elliott,* the real estate broker had not dealt directly with the buyer. Thus, the court concluded that Smith rather than Vihstadt had acted as a "broker" as the term is generally defined.

Smith does not appear to have been a licensed real estate broker, and, in any event, the Commission's jurisdiction over her was not in issue. Thus, in *Vihstadt* the characterization of the real estate contract as personalty appears either to be dicta or to provide an alternative holding. We are not sure which was intended. We do not know whether the court intended to hold that, even if Vihstadt had dealt directly with the buyer, the Commission would have lacked jurisdiction to suspend.

We recognize that the question of the Commission's jurisdiction to suspend a license is not before us. Nevertheless, to the extent petitioners rely on *Elliott,* they have suggested that if the Commission would have had jurisdiction to suspend, then recovery under the Act is available. We disagree.

The dissent in *Elliott* suggests that there was a disagreement at that time among the members of the court over the proper analysis in determining the Commission's jurisdiction to suspend. We understand the majority opinion as taking an expansive view of that jurisdiction. The majority concluded that the Commission had jurisdiction, because Elliott represented himself to be a broker, acted in that

capacity, and received a commission for the transaction. The opinion avoids classifying the underlying transaction as involving either personalty or real property. Thus, we believe the majority implicitly held that the broker was engaged in conduct related to dealings as a real estate broker, whether or not the event giving rise to the complaint was a real estate transaction. There is support in the statute for that result. *See* § 61–29–12(K) (commission shall have the power to suspend or revoke a license for conduct "related to dealings as a real estate broker or real estate salesperson and which constitutes or demonstrates bad faith, * * * fraud, dishonesty").

Because *Elliott* does not rely on the characterization of the sale of a real estate contract, and because the facts of the two cases differ, we do not believe *Elliott* is overruled by *Vihstadt.* Thus, we conclude that the question of whether a transaction requires a broker's license is not the same question as whether the Commission has jurisdiction to suspend a license. *See generally Watts v. Andrews,* 98 N.M. 404, 649 P.2d 472 (1982) (holding that a person suing for recovery of a commission for introducing a buyer and a seller of real estate must be licensed). However, because *Elliott* does not address the question of whether the vendor's interest in a real estate contract is personalty, petitioners' reliance on *Elliott* is misplaced.

The law as enunciated in *Vihstadt* is consistent with previous caselaw characterizing the vendor's interest in land subject to a real estate contract as personalty for various purposes. For example, in *Marks v. City of Tucumcari,* 93 N.M. 4, 595 P.2d 1199 (1979), the supreme court held that a judgment lien cannot attach to the vendor's interest in land subject to a real estate contract, because a judgment lien cannot attach to personalty. In *Gregg v. Gardner,* 73 N.M. 347, 388 P.2d 68 (1963), the supreme court held that where decedent had sold real estate and retained an interest in a real estate contract, decedent's interest should be treated as personalty for purposes of construing a devise of real

property. *See also Mesich v. Board of County Comm'rs of McKinley County*, 46 N.M. 412, 129 P.2d 974 (1942). In *Mesich*, the issue before the court was whether the buyers had a right to recover damages to property taken for public use when they had not received legal title at the time of the taking. In determining the buyer was entitled to the damages, the court reiterated the long-standing rule that the vendor holds legal title as trustee for security only.

Petitioners argue that these cases are distinguishable since the court applied the doctrine of equitable conversion, which is not always applicable. We agree that the doctrine of equitable conversion is not always applicable. Nevertheless, this court is bound by supreme court precedent. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973). The supreme court having determined in its most recent decision that the sale of the vendor's interest in a real estate contract is the sale of personalty and is not included in the definition of real estate under Section 61–29–2(A), we believe that decision controls this case, whether that determination is dicta or an alternative holding. Because the sale of a real estate contract is not a real estate transaction, a real estate license is not required for that transaction. *See* § 61–29–2(A), (B) (definitions of broker and real estate salesperson).

We must also reject petitioners' argument that the characterization of vendors' interests in real estate contracts as personalty does not necessarily exclude petitioners' transactions with Aqui from the Act's definition of real estate. This argument is based on the language including "leaseholds and other interest less than leaseholds" in the definition of real estate. § 61–29–2(A). Petitioners argue that since leaseholds are personal property, the legislature intended to include personal property in the definition of real estate. *See, e.g., American Mortgage Co. v. White*, 34 N.M. 602, 287 P. 702 (1930) (assignment of state grazing lease is personal property; there-

fore, there was no violation of Enabling Act, which prohibits mortgaging or encumbering state lands); *State ex rel. Truitt v. District Court of Ninth Judicial Dist., Curry County*, 44 N.M. 16, 96 P.2d 710 (1939) (while a leasehold for term of years is an interest in land, it is personalty at common law and governed by rules applicable to personal property).

However, the legislature clearly did not intend to include all personal property in the definition of real estate. Unlike leasehold interests, an interest in a real estate contract does not involve a right to use the property. It is for many purposes an interest in money rather than land. Considered in this light, it is reasonable to distinguish interests in real estate contracts from leaseholds and interests less than leaseholds, such as easements, which include rights to use the property.

Petitioners also argue that the sale of a vendor's interest in a real estate contract is an assignment of a contingent reversionary interest, and therefore is included in the statutory definition of real estate. *Cf. Shindledecker v. Savage*, 96 N.M. 42, 627 P.2d 1241 (1981) (recognizing a vendee's interest as mortgagable but subject to prior interest of vendor). We agree with petitioners' general contention that the vendor's interest in a real estate contract is for some purposes an interest in real estate. The doctrine of equitable conversion recognizes that the seller holds legal title to the land. Nevertheless, it does not follow that an interest in a real estate contract is real estate as defined by Section 61–29–2(A), nor does it follow that the legislature intended parties who purchase interests in real estate contracts to be entitled to recovery under the Act.

Based on *Vihstadt* and the statutory definition of real estate, it is reasonable to construe legislative intent to protect present interests in some beneficial use of real property. We note the legislature in 1987 amended the language in Section 61–29–2(A) to read, "leaseholds and other interest less than leaseholds, including rights to use property." § 61–29–2(A).

A number of states have enacted legislation that permits limited recovery on unsatisfied judgments against licensed brokers. *See, e.g., McGaughey v. Fox,* 94 Cal.App.3d 645, 156 Cal.Rptr. 593 (1979); *Richards v. Income Realty & Mortgage, Inc.,* 654 P.2d 864 (Colo.Ct.App.1982); *Arizona Real Estate Dep't v. Arizona Land Title & Trust Co.,* 9 Ariz.App. 54, 449 P.2d 71 (1968). The statutes vary in their description of what kind of wrongdoing by a broker supports recovery. *Compare Arizona Real Estate Dep't v. Arizona Land Title & Trust Co.* (act requires plaintiff seeking recovery to show that judgment was based on conduct by a broker in violation of the regulatory act) *with McGaughey v. Fox* (act requires plaintiff seeking recovery to show that the particular transaction required a real estate broker's license). Our statute more closely resembles California's.

Due to variations in the statutory descriptions of what kind of conduct supports recovery, cases from other jurisdictions provide little guidance. Further, each state varies in describing those acts for which a real estate license is required. *Compare McGaughey v. Fox* (sale was not a transaction requiring a license, since corporation sold its own interest and acted on its own behalf) *with State ex rel. Talley v. McAvoy,* 14 Ariz.App. 229, 482 P.2d 478 (1971) (by Arizona statute, broker defined to include sale of real estate on own account while holding oneself out as a full or part-time dealer) *and Poorbaugh v. New Mexico Real Estate Comm'n* (same). We note that California defines real estate broker to include one who sells or offers to sell, buys or offers to buy, or exchanges or offers to exchange a real property sales contract. *See Booth v. Robinson,* 147 Cal. App.3d 371, 195 Cal.Rptr. 130 (1983).

Despite the differences in wording, the various statutes share a common purpose: to provide limited protection from financially unstable brokers or salespersons who are guilty of misconduct as brokers. *See Richards v. Income Realty & Mortgage, Inc.; Shirai v. D'Orazi,* 57 Cal.App.3d 276, 127 Cal.Rptr. 549 (1976). As a remedial statute, it is to be given a liberal construction. *Booth v. Robinson.* "Remedial statutes are to be construed to promote their purposes and protect persons within their purview. Relief will be granted unless clearly forbidden by statute." *Id.* 147 Cal. App.3d at 378, 195 Cal.Rptr. at 135.

The question of whether the misconduct in question falls under the statute ordinarily is a question of fact. *See McGaughey v. Fox.* The decision of the trial court will be sustained if supported by substantial evidence. *Booth v. Robinson.* In this case, however, the terms of the statute preclude relief. The problem is that our statute, unlike California's, narrowly defines transactions for which a license is required and limits recovery to those transactions. *Cf. Booth v. Robinson* (recovery permitted where petitioners showed licensed broker induced plaintiff to give her money for the alleged purpose of investing it in unspecified real estate transactions). Under the language used in the Act, the legislature has excluded the purchase of real estate contracts for investment income from the group of transactions that will support recovery.

The requirements that the judgment be against a licensed broker and that it be based on a transaction for which a license is required are limitations on eligibility rather than the amount of recovery.[1] Both are related to the fact that the fund is created from fees assessed against brokers. *See* § 61–29–22. The second, however, has the further function of excluding some petitioners who have been injured by a broker's conduct. Similarly, the requirement under the original Act that the judgment be based on fraud, misrepresentation,

---

1. In New Mexico, recovery on a single judgment is limited to $10,000. *See* § 61–29–23. Originally, attorney fees and court costs, not to exceed $1,000 per transaction, were available. *See* 1980 N.M.Laws, ch. 82, § 4(A). Presently the Act does not provide for attorney fees, and the aggregate amount recoverable by all claimants for losses caused by any one licensee may not exceed $30,000.

or deceit excludes some petitioners who have been injured by a broker's conduct. *See* 1980 N.M.Laws, ch. 82, § 4(A).

For many people, the purchase of a home is the largest investment they will make. The sale of a home is often a factor in other major decisions, such as changing jobs or retiring. Under these circumstances, real estate brokers and salespersons are in a position of particularly great trust and confidence. *See Amato v. Rathbun Realty, Inc.,* 98 N.M. 231, 647 P.2d 433 (Ct.App. 1982) (a broker is a fiduciary, in a position of great trust and confidence, and must exercise utmost good faith). The legislature may have intended to limit an unusual recovery[2] to transactions that are the most likely to cause harm and to distinguish transactions in which the plaintiff was not buying or selling a beneficial interest in land. Alternatively, the legislature may have chosen a phrase that has meaning in other contexts, in the belief that the phrase would provide a clear dividing line between eligible and ineligible transactions. In either case, the result we reach would be consistent with legislative intent.

Petitioners cite several out-of-state cases where recovery was allowed for transactions involving the sale of land purchase contracts. We are not persuaded to follow these cases. In *Moe v. Centurion Inv. Co.,* 293 N.W.2d 826 (Minn.1980), although recovery was allowed, the only issue before the appellate court was the limitation of the fund's liability for the acts of a single licensee. In a footnote, the court noted that the Minnesota Association of Realtors argued as amicus that the claims were not valid, but the court determined the issue could be raised only by the commissioner. *Id.* at 828, fn. 1. In *State ex rel. Talley v. McAvoy,* the Arizona court upheld a recovery based on the sale of land purchase contracts without discussing why the transactions were included in the definition of real estate. Further, we view the Arizona

statute as providing broader coverage than does New Mexico's.

Finally, petitioners contend there is a nexus between the fraud committed and Aqui's status as a licensed real estate salesman. Petitioners urge this court to interpret the Act so that violations of Section 61–29–12 in which the individual was acting in the capacity of a licensed broker or salesperson could be the basis for recovery under Section 61–29–23. We believe this argument requires us to apply the statute beyond its terms.

Petitioners also urge this court to read the real estate licensing provisions in conjunction with the Mortgage Loan Company and Loan Broker Act, which exempts brokers who receive their usual and customary commissions, and warn of the risk of unregulated activity if this court determines that sales of real estate contracts do not require real estate licenses. *See* NMSA 1978, §§ 58–21–1 to –26 (Repl.1986 & Cum. Supp.1988). We are not persuaded that brokers who engage in sales of real estate contracts are not regulated. *See Elliott v. New Mexico Real Estate Comm'n.*

In conclusion, we determine the purchase of interests in real estate contracts for investment purposes does not require a real estate broker's or saleperson's license. Therefore, petitioners are not entitled to recovery under the Act. We affirm the denial of recovery in *Garcia.* We reverse the summary judgment granted petitioners in *Lopez* and remand with instructions to enter judgment for the Commission. No costs are awarded.

IT IS SO ORDERED.

BIVINS, C.J., and ALARID, J., concur.

---

**2.** There is no constitutional or common law liability of the state to one defrauded by a realtor. *Shirai v. D'Orazi.* The protection provided by both versions of the Act, minimal as it is, is unusual. Thus, we view the limitations imposed by the legislature as an experiment in regulating a profession.