905 P.2d 198

In re Clete Norman FINCH and Mary Louise Finch, Debtors.

Clete Norman FINCH and Mary Louise Finch, Plaintiffs and Counterdefendants,

v.

BENEFICIAL NEW MEXICO, INC., a Delaware corporation d/b/a Beneficial Mortgage Company, Defendant and Counterclaimant.

No. 22425.

Supreme Court of New Mexico.

Oct. 17, 1995.

Robert L. Finch, Jr., Farmington, for Plaintiffs.

R. Thomas Dailey, P.C., R. Thomas Dailey, Farmington, for Defendant.

## OPINION

FRANCHINI, Justice.

1. In this case, the United States District Court for the District of New Mexico certified a single question of law to this Court. That question is whether a mortgage granted by the seller of real property that is subject to a real estate contract attaches to the proceeds of that contract as a matter of law. We hold that a mortgage lien does not automatically attach to the proceeds of a separate real estate contract, but that under the circumstances of this case, it operated as a sufficient perfected security agreement.

2. *Facts and proceedings in federal court.* Clete Norman Finch and his wife Mary Louise Finch borrowed $12,000 from Beneficial New Mexico, Inc., doing business as Beneficial Mortgage Company. To secure the debt, Beneficial obtained and recorded a mortgage on real property that it knew the Finches had already sold to Clifton Wayne Rasmussen under a real estate contract. The contract provided for monthly payments, and the Finches retained legal title to the property and could declare forfeiture and regain possession if Rasmussen defaulted on those payments. Beneficial did not require the Finches to assign the real estate contract as part of the loan transaction; nor did it require the Finches to sign an agreement to assign the contract in the event of their default; nor did it take an express security interest in the proceeds of the contract.

3. The record does not reflect the sequence of events, but the Finches defaulted on their loan with Beneficial and declared bankruptcy and Rasmussen paid off the real estate contract before it was due. Beneficial claimed priority to over $6000 in proceeds from the contract in the bankruptcy proceedings. That money is held in escrow pending the resolution of this matter.

4. When Beneficial attempted to collect the Rasmussen contract proceeds as a "secured creditor," the Finches argued that Beneficial lost its secured status and no longer held a forecloseable mortgage when legal title passed to Rasmussen. The bankruptcy court concluded that the legal effect of Beneficial's mortgage should be determined under state law; consequently, the federal district court certified the question to this Court.

5. *Arguments.* In this Court, the Finches essentially claim that Beneficial used the wrong legal instrument to secure their loan and that the Finches therefore should benefit from Beneficial's mistake. They urge this Court to make a sharp distinction between mortgages and assignments and they cite to the body of case law protecting third parties from claims of creditors who have failed to give adequate notice of an interest in property.

6. Beneficial asserts that using a mortgage was a proper way to secure the loan; that the mortgage attached to any interest that the Finches had in the property, including the right to the contract proceeds; and that it should maintain its status as a "secured creditor." Beneficial contends that the question should be decided by examining the unambiguous intent of the parties and interpreting the mortgage as a grant of a security interest or assignment of rights.

7. *The mortgage was not an assignment.* We agree with the Finches that there is an important legal distinction be-

tween a mortgage and an assignment and that a mortgage alone has no legal effect upon a separate contract not described in the mortgage. *See Kuntsman v. Guaranteed Equities, Inc.,* 105 N.M. 49, 50, 728 P.2d 459, 460 (1986) (defining a mortgage as a "conveyance of real estate, or some interest therein, defeasible upon the payment of money or the performance of some other condition"); *Benton v. Albuquerque Nat'l Bank,* 103 N.M. 5, 10, 701 P.2d 1025, 1030 (Ct.App.) ("An assignment is an act ... by which one person causes a transfer of a right or interest in property."), *cert. quashed,* 103 N.M. 62, 702 P.2d 1007 (1985). An assignment immediately transfers legal title, while a mortgage only establishes a lien on legal title. *See Slemmons v. Massie,* 102 N.M. 33, 34, 690 P.2d 1027, 1028 (1984) (stating that "a mortgage is merely a lien and passes no title to the mortgaged property").

8. An individual may not claim rights to the proceeds of a real estate contract to which he is not a party by simply producing a mortgage on the property that is subject to that contract. The individual must first foreclose on the mortgage and establish *in equity* that he is entitled to legal title so that he may step into the shoes of the former owner and receive the benefits of that contract. One who has been assigned a real estate contract, on the other hand, may simply produce the contract to enforce entitlement to the contract's proceeds.

9. If the Finches had defaulted on their loan and Beneficial had successfully foreclosed on the mortgage *before* Rasmussen paid off the contract, there is no question that Beneficial would have been entitled to receive the rest of the contract proceeds as the legal owner of the property. The problem in this case is that the whole title to the property, legal and equitable, passed to Rasmussen before Beneficial could foreclose on its mortgage. Once full legal title passed to Rasmussen, Beneficial lost all its rights associated with ownership of that property *in relation to Rasmussen. See First Nat'l Bank of Belen v. Luce,* 87 N.M. 94, 95–96, 529 P.2d 760, 761–62 (1974) (holding that bank with knowledge of real estate contract had no lien *against third-party purchasers* on money

due on a real estate contract from the third-party purchasers because no assignment had been made of the funds and the bank failed to comply with the U.C.C. on secured transactions). However, Beneficial did not lose its rights associated with the written agreement in regard to the Finches.

10. *The mortgage may be interpreted as a perfected security agreement as to the Finches.* Although the Finches concede that the mortgage properly attached to their legal title and their reversionary interest in the property in the event of default, they argue that the mortgage did not and could never attach to their personalty interest in the proceeds of the real estate contract. *Cf. Southwest Land Inv., Inc. v. Hubbart,* 116 N.M. 742, 867 P.2d 412 (1993) (noting the three interests of a real estate contract vendor). This, they argue, is because mortgages attach only to real property, not personalty. A vendor's interest in a real estate contract, however, is for some purposes an interest in real estate. *See Garcia v. New Mexico Real Estate Comm'n,* 108 N.M. 591, 595, 775 P.2d 1308, 1312 (Ct.App.), *cert. denied,* 108 N.M. 624, 776 P.2d 846 (1989).

11. The Finches do not claim that they did not intend to use all of their interest in the property to secure the loan; they simply claim that the mortgage was the wrong instrument to secure the loan *after their default and bankruptcy* because of the unexpected pay-off. In other words, they claim that Beneficial should have foreseen these circumstances and used an additional legal instrument to secure the loan, such as a security agreement, financing statement, or assignment.

12. A "security agreement" is simply an "agreement which creates or provides for a security interest." NMSA 1978, § 55–9–105(1)(*l*) (Repl.Pamp.1987). A "security interest" is "an interest in personal property ... which secures payment or performance of an obligation." NMSA 1978, § 55–1–201(37) (Repl.Pamp.1993). The Finches claim that the mortgage could not serve as a security agreement because it did not expressly include the contract proceeds. If a

third party made this argument, we would be hard-pressed to disagree, because the purpose of a security agreement is to give notice to *third parties* that an interest may be claimed in the collateral by another. *See, e.g., Reconstruction Finance Corp. v. Stephens,* 118 F.Supp. 565, 567 (D.N.M.1954) ("Generally, to have constructive notice in regard to personalty or realty, it is essential that the persons against whom such notice is operative, had they wished to have inquired, could readily have learned that another possessed a lien on the property of interest."). However, the Finches not only had actual notice of Beneficial's lien on their interest, but in fact they offered their whole interest to secure the loan. *See* 68A Am.Jur.2d *Secured Transactions* § 166 (1993) (stating that the U.C.C. does not require a formal document labeled "security agreement"; it only requires a writing adequately describing the collateral and the agreement to use it for security and carrying the signature of the debtor). *As to the Finches,* the description of the real estate subject to the real estate contract adequately described the contract proceeds. They cannot now argue that silence reserved their personalty interest. *See Young v. Thomas,* 93 N.M. 677, 679, 604 P.2d 370, 372 (1979) (stating that interests are ascertained by the language and conduct of the parties and object to be accomplished by the agreement under the circumstances).

13. We agree with Beneficial that the mortgage served as a written security agreement attaching to the proceeds of the contract, and that the filing of the mortgage in the county records perfected that interest *as to the Finches. Cf. Reardon v. Alsup (In re Anthony),* 114 N.M. 95, 96–99, 835 P.2d 811, 812–15 (1992) (finding that a security interest in real property was properly perfected by recording in the county clerk's office); *General Motors Acceptance Corp. v. Woolbright Motors, Inc.,* 718 S.W.2d 638, 642–43 (Mo.Ct. App.1986) (interpreting a lease to be a security agreement that allowed a lender to repossess in the event of default).

14. We find support for our ruling in other jurisdictions. In *Kreiger v. Hartig,* 11 Wash.App. 898, 527 P.2d 483 (1974), for example, the debtor orally agreed to secure a loan with his truck, but he did not have a title to give the creditor (which was the only way to perfect a security interest in a vehicle). The debtor made application for a new title but defaulted on the loan before the title was obtained. *Id.* at 485. Like the Finches, the debtor claimed bankruptcy and asserted that the creditor was unsecured and should not be able to collect on the loan because the creditor did not have the proper form of perfected security. *Id.* at 486. The court stated that whether a perfected security agreement existed was a question of fact; that the debtor intended to create a security interest, as evidenced by the title application; and that the signed application served as a sufficient perfected security interest. *Id.* at 485. The Code's general policy is to avoid technical formalities. *Id.* at 486.

15. *Marks is distinguished.* Finally, the Finches argue that by analogy to *Marks v. City of Tucumcari,* 93 N.M. 4, 595 P.2d 1199 (1979), we should find in their favor. We disagree. In *Marks,* the real estate contract vendors, the Goldensteins, sold property to Marks in 1976. Later that year the city obtained a judgment against the Goldensteins. In 1977 Marks obtained a mortgage on the property, paid off the real estate contract, and obtained legal title to the property. The city attempted to attach its lien to Marks's title, claiming that the lien transferred with the legal title. We held that Marks took the property free and clear of the city's lien because at the time of the judgment the Goldensteins had only a "bare legal title, held in trust as security for the payment of the purchase price." *Id.* at 5, 595 P.2d at 1200. Based on their interpretation of *Marks,* the Finches argue that "[i]f a duly recorded judgment lien does not attach to the Seller's interest in a real estate contract then neither should a mortgage attach to the Seller's interest in a real estate contract." The Finches misapprehend the holding in *Marks.* Marks was a bona fide purchaser who bought the property before the judgment lien attached. We held that the lien did not attach to the *buyer's* interest. In this case, the Finches are the sellers, not a bona fide purchaser, and the Finches offered their interest as security for their loan.

■ 16. *Conclusion.* Although a mortgage, without more, is not sufficient to automatically attach to the proceeds of a separate real estate contract, when a contract vendor has offered his interest in the subject property as security for a loan the mortgage may serve as a security interest and becomes perfected upon filing with the county clerk's office where the property is located. Beneficial maintained its status as a secured creditor as to the Finches, who were the sellers of the real estate, and the Finches may not defeat that status by relying on case law designed to protect bona fide third-party purchasers.

17. IT IS SO ORDERED.

BACA, C.J., and MINZNER, J., concur.