**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-052**

**Filing Date: April 5, 2011**

**Docket No.  29,785**

**PC CARTER COMPANY,**
a Texas corporation,

Plaintiff-Appellee/Cross-Appellant,

**v.**

**SCOTT MILLER, PINNACLE REALTY
AND DEVELOPMENT, INC., and
JANE E. McGUIRE,**

Defendants-Appellants/Cross-Appellees.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Angelo J. Artuso
Julia Broggi
Albuquerque, NM

for Appellee/Cross-Appellant

Adam D. Rafkin, P.C.
Adam D. Rafkin
Ruidoso, NM

for Appellants/Cross-Appellees

Realtors Association of New Mexico
Ashley Strauss-Martin
Santa Fe, NM

for Appellants/Cross-Appellees *Amicus Curiae*

1

**OPINION**

**VANZI, Judge.**

**{1}** This appeal arises out of a dispute between foreign-licensed and New Mexico-licensed real estate agents and brokers over a commission. Pinnacle Realty and Development, Inc. (Pinnacle Realty), Scott Miller, and Jane E. McGuire (collectively, Defendants) appeal from the judgment of the district court awarding PC Carter Company (Plaintiff) a two-percent commission in the amount of $190,000 on the sale of real property located in New Mexico. Defendants raise several claims on appeal, including the claim that Plaintiff's cause of action was barred by NMSA 1978, Section 61-29-16 (2005) because Plaintiff was not licensed under the Real Estate Brokers and Salesmen Act (Act), NMSA 1978, Sections 61-29-1 to -29 (1959, as amended through 2008).

**{2}** We conclude that Plaintiff is barred from collecting a real estate commission because it was acting as a broker without a valid New Mexico broker's license or a written, foreign broker's agreement in violation of Section 61-29-16 and the regulations promulgated by the New Mexico Real Estate Commission (Commission). Accordingly, we reverse the judgment of the district court.

**BACKGROUND**

**{3}** In January 2006, Wesley and Cindy Smith (collectively, the Smiths) owned Lincoln Mesa Ranch (the ranch), which consisted of 1400 acres of land in Lincoln County, New Mexico. The Smiths were interested in selling the ranch and, therefore, Cindy Smith contacted Preston Carter, the President and qualifying broker for Plaintiff, to seek his advice regarding the ranch's value. Although both Carter and Plaintiff were licensed real estate brokers in the state of Texas, they did not hold a New Mexico real estate agent or broker's license.

**{4}** On January 24, 2006, the Smiths and Carter executed a letter of intent in which the Smiths agreed to sell, and Carter agreed to buy, the ranch for $8,000,000. Additionally, the Smiths agreed to pay Plaintiff a real estate commission in the amount of six percent of the purchase price. The letter of intent was not a contract, "but simply a non-binding [l]etter of [i]ntent subject to a formal written [c]ontract of [s]ale."

**{5}** From late January to early May 2006, Carter conducted due diligence and negotiated the terms and conditions of a purchase agreement with the Smiths. During the due diligence period, Carter visited Lincoln County on multiple occasions, hired a surveyor and hydrologist, met with a Lincoln County Commissioner, and developed marketing materials related to the contemplated development and subdivision of the ranch. At trial, no evidence was presented as to the monetary value of Plaintiff's due diligence activities.

2

**{6}** In February 2006, Carter asked Miller and McGuire of Pinnacle Realty to assist him in conducting his due diligence. McGuire and Miller were licensed New Mexico real estate agents and Pinnacle Realty was a licensed New Mexico broker. Carter informed Miller and McGuire of his plan to develop and subdivide the ranch into smaller parcels of land and discussed the possibility of Pinnacle Realty acting as the exclusive listing agent for the subdivided lots. At some point, Miller offered to find a third party to purchase the ranch. Carter and Miller orally agreed that, if Miller found a third-party purchaser, then Carter would refrain from buying the ranch and, instead, would share equally in the commission on the purchase price.

**{7}** In May 2006, Cindy Smith informed Carter that she had decided not to sell the ranch to anyone who intended to subdivide it. At about the same time, Miller told Verde Heritage, Inc. (Verde Heritage) about the property. At Miller's direction, McGuire contacted Carter to inform him of Verde Heritage's interest in the ranch. Carter told McGuire that the Smiths no longer wished to sell the ranch for subdivision, but instructed McGuire to contact the Smiths anyway and inform them of Verde Heritage's interest. Carter asked McGuire to call him back with a status update.

**{8}** On May 17, 2006, Miller and McGuire showed the property to Verde Heritage. Even though Verde Heritage informed the Smiths that it intended to purchase the property for subdivision, the Smiths nonetheless agreed to sell the ranch for $9,500,000 on the condition that Miller and McGuire would "take care" of Carter. Miller and McGuire both agreed to the Smiths' condition. According to the terms of the purchase agreement, McGuire received a two-percent real estate commission as the seller's agent, and Miller received a two-percent real estate commission as the buyer's agent.

**{9}** McGuire called Carter to inform him of the sale and offer him a "referral fee" of one percent of the purchase price. Carter rejected the referral fee, indicating that he was entitled to fifty percent of a six-percent commission on the purchase price of the ranch pursuant to the terms of the parties' prior oral agreement.

**{10}** Thereafter, Plaintiff filed suit in the district court against Defendants, seeking damages for tortious interference with prospective contract, breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, breach of fiduciary duties, and unjust enrichment.[1] Although Plaintiff abandoned the tortious interference with prospective contract claim at trial, the remaining claims were submitted to the district court for adjudication. The district court found in favor of Plaintiff and awarded damages "equal to two percent . . . of the $9,500,000 purchase price (*i.e.* $190,000)." Additionally, the district court awarded "interest at the rate of 8 3/4% per annum." This appeal followed.

---

[1]Plaintiff also filed suit against the Smiths, alleging unjust enrichment and misrepresentation. However, these claims were settled prior to trial and the Smiths are not a party to this appeal.

**STANDARD OF REVIEW**

**{11}**     The proper interpretation of the Act and its accompanying administrative regulations is a question of law, which we review de novo. *Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 18, 147 N.M. 523, 226 P.3d 622; *State v. Willie*, 2009-NMSC-037, ¶ 9, 146 N.M. 481, 212 P.3d 369. "In interpreting sections of the Administrative Code, we apply the same rules as used in statutory interpretation." *Id.* (internal quotation marks and citation omitted).

> Our primary goal is to ascertain and give effect to the intent of the Legislature. In doing so, we examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish. We must take care to avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction.

*State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868 (internal quotation marks and citations omitted).

**DISCUSSION**

**{12}**     The purpose of the Act is "to regulate and, thus, protect the public against abuses which can occur within the real estate business." *Amato v. Rathbun Realty, Inc.*, 98 N.M. 231, 232, 647 P.2d 433, 434 (Ct. App. 1982). To this end, the Act makes it unlawful for a person to act "in the capacity of . . . an associate broker or a qualifying broker within this state without a license issued by the [C]ommission." Section 61-29-1. Additionally, Section 61-29-16 provides:

> No action for the collection of a commission or compensation earned by any person as a qualifying broker or an associate broker required to be licensed under the provisions of [the Act] shall be maintained in the courts of the state unless such person was a duly licensed qualifying broker or associate broker at the time the alleged cause of action arose.

"There can be no doubt that what Section 61-29-16 means is that a judgment for recovery of a real estate commission without a finding that [the] plaintiff held either a broker's or salesman's license, when the cause of action arose, is erroneous." *Watts v. Andrews*, 98 N.M. 404, 406, 649 P.2d 472, 474 (1982) (internal quotation marks and citation omitted).

**Whether Plaintiff Was Acting as a Broker**

4

**{13}** Defendants and Amicus Curiae, the Realtors Association of New Mexico (RANM), claim that Section 61-29-16 bars Plaintiff from recovering a real estate commission on the sale of the ranch because Plaintiff was not a New Mexico licensed broker at the time the cause of action arose. Plaintiff responds that it "was not acting as a 'broker' or 'qualifying broker' in New Mexico during any time material to this lawsuit; and, therefore, Plaintiff's claims are not barred by Section 61-29-16."

**{14}** The Act defines a "broker" or "qualifying broker" as

> a person who for compensation or other consideration from another:
>> (a)     lists, sells or offers to sell real estate; buys or offers to buy real estate; or negotiates the purchase, sale or exchange of real estate or options on real estate;
>> (b)     leases, rents or auctions or offers to lease, rent or auction real estate;
>> (c)     advertises or holds himself out as being engaged in the business of buying, selling, exchanging, renting, leasing, auctioning or dealing with options on real estate for others as a whole or partial vocation; or
>> (d)     engages in the business of charging an advance fee or contracting for collection of a fee in connection with a contract under which the broker or qualifying broker undertakes primarily to promote the sale of real estate through its listing in a publication issued primarily for that purpose or for the purpose of referral of information concerning real estate to brokers, qualifying brokers or associate brokers[.]

Section 61-29-2(A)(4); *see* § 61-29-2(A)(3) (defining an "associate broker" as "a person who, for compensation or other valuable consideration, is associated with or engaged under contract by a qualifying broker to participate in an activity described in Paragraph (4) of this subsection or to carry on the qualifying broker's business as a whole or partial vocation"). "Section 61-29-2(C) provides that any one act of a person in performing any of the above-mentioned activities will constitute that person a real estate broker or salesperson." *Watts*, 98 N.M. at 407, 649 P.2d at 475.

**{15}** In *Watts*, our Supreme Court considered whether a middleman, i.e., "a person who brings two parties together in a real estate transaction," is a broker or qualifying broker who must be licensed to maintain an action for a fee or commission under Section 61-29-16. *Watts*, 98 N.M. at 405, 649 P.2d at 473. In that case, the plaintiff and the seller entered into an oral agreement, "whereby [the seller] agreed to pay [the plaintiff] an unspecified commission if [the plaintiff] would locate a purchaser" for the seller's property. *Id.* at 406, 649 P.2d at 474. The plaintiff, who was not a licensed New Mexico real estate broker or salesman, brought the buyer and seller together, but did not negotiate the terms of the sale. *Id.*

5

**{16}** The Court concluded:

> [A] person who simply brings two parties together in a real estate transaction must be licensed to sue for recovery of a commission. To rule otherwise would be to violate the clear intent of the Legislature in requiring that real estate brokers or salespersons be licensed. By requiring licensure, the Legislature intended that the real estate occupation be regulated. The Legislature intends to protect the public by requiring the [Commission] to evaluate the competence and moral character of persons in the real estate business through licensing and examination requirements. The Legislature ensures the furtherance of its purposes by prohibiting unlicensed persons acting as real estate brokers from maintaining an action to recover a commission. If we were to permit an unlicensed person who brings two parties together in a real estate transaction to recover a commission, we would in effect render the [Act] meaningless.

*Id.* at 407, 649 P.2d at 475 (citations omitted). Accordingly, the Court held that middlemen are "broker[s] within the definition of the [Act]," who must be licensed in order to maintain a cause of action for the collection of a commission. *Id.* at 408, 649 P.2d at 476.

**{17}** It is undisputed that, but for Plaintiff, Defendants "would not have known that [the ranch] was for sale because it had not been listed and . . . Defendants had never visited or talked to the Smiths about the sale of [the ranch]." Thus, Plaintiff was a "finder" or a "middleman" who brought the sellers, the Smiths, and the buyer, Verde Heritage, together through the assistance of Defendants. *See Webster's Third New Int'l Dictionary* (1986) (defining a "finder" as "one that discovers a financial opportunity, passes it on to another, and often acts as a go-between in subsequent negotiations"); 12 Am. Jur. 2d, Brokers § 3 (2010) (using the terms "finder" and "middleman" interchangeably). Although Plaintiff did not negotiate the terms of the sale, "for purposes of licensure, the term 'negotiate' also includes one who brings two parties together." *Watts*, 98 N.M. at 407, 649 P.2d at 475. Accordingly, we conclude that Plaintiff was a "broker" within the meaning of Section 61-29-2(A)(4).

**{18}** Our conclusion finds ample support in the record. At trial, Carter testified that he was entitled to half of the commission on the sale of the ranch because he and Defendants had agreed to "work[] together" as "third-party brokers" or "co-brokers" to help the Smiths "liquefy the property." He explained that the Smiths were "his client[s]" and that Defendants had "went around [him] to [the Smiths]" and completed the sale of the ranch "without [him] or without [his] counsel." Additionally, Plaintiff's amended complaint sought damages for Defendants' breach of the parties' oral agreement to "act as co-brokers and share the 6% commission on a 50/50 basis." Because Plaintiff conceded, as a factual matter, that it was acting as a broker or associate broker in connection with the sale of the ranch, it is barred from collecting a commission under Section 61-29-16.

6

**{19}** Plaintiff relies on *Vihstadt v. Real Estate Commission of New Mexico*, 106 N.M. 641, 748 P.2d 14 (1988), to support its claim that it was not acting as a broker, qualifying broker, or associate broker as a matter of law. In *Vihstadt*, our Supreme Court reversed the Commission's decision to revoke Robert Vihstadt's broker's license. *Id.* at 644, 748 P.2d at 17. Vihstadt and his wife had purchased a piece of property for $137,900, but failed to provide a cash down payment as required by the contract for sale. *Id.* at 642, 748 P.2d at 15. Thereafter, Vihstadt hired Nan Smith, a licensed real estate broker, to find a buyer for the real estate contract. *Id.* Smith sold the real estate contract to Ronald Rodeman for $20,650. *Id.* After making several payments to Rodeman, the Vihstadts defaulted on the real estate contract and the underlying mortgage. *Id.* As a result, the bank foreclosed on the property and Rodeman lost his investment. *Id.*

**{20}** Our Supreme Court concluded that the Commission lacked jurisdiction to revoke Vihstadt's license because he had not "engage[d] in any activities of selling, or offering to sell, or negotiating the purchase or sale or exchange of real estate or a real estate contract. He was not employed as a 'broker'; Smith was the 'broker' as is generally defined above." *Id.* at 643, 748 P.2d at 16. The Court proceeded to hold, however, that "Smith was not engaged in the business of a real estate broker" either because she "was acting as a note broker, a seller of commercial paper." *Id.*

**{21}** We conclude that *Vihstadt* is factually distinguishable from the present case. First, the Court determined that the Act did not apply to the transaction at issue in *Vihstadt* because a real estate contract is an item of personalty, not realty. *Id.* at 644, 748 P.2d at 17. Second, as this Court recognized in *Garcia v. N.M. Real Estate Comm'n*, 108 N.M. 591, 594, 775 P.2d 1308, 1311 (Ct. App. 1989), "the question of whether a transaction requires a broker's license is not the same question as whether the Commission has jurisdiction to suspend a license." Third, Vihstadt was acting on his own behalf as the owner of real property, rather than as a broker who acts on behalf of a principal and receives "compensation or other consideration from another" for his services. Section 61-29-2(A)(4); *see* 12 Am. Jur. 2d, § 1 (2010) ("Two elements must be met to find that one is acting as a 'broker': the person must act for compensation; and the person must act on behalf of someone else."). Accordingly, Plaintiff's reliance on *Vihstadt* is misplaced.

**Whether Plaintiff May Recover a Commission as a Foreign Broker**

**{22}** Having determined that Plaintiff was acting as a broker in connection with the sale of the ranch, we next address whether Plaintiff nonetheless may collect a commission as a foreign broker. *See* 16.61.1.7(Z) NMAC (12/31/2008) (defining a "foreign broker" as "a real estate brokerage licensed by a jurisdiction other than New Mexico engaged in real estate-related activities in New Mexico"). Section 61-29-12(A)(7) of the Act provides that "a qualifying broker may pay a commission to a qualifying broker of another state; provided . . . that the nonresident broker shall not conduct in this state any of the negotiations for which a fee, compensation or commission is paid except in cooperation with a licensed qualifying broker of this state[.]"

**{23}** Part 27 of Chapter 61 of the New Mexico Administrative Code "establish[es] the requirements and policies governing transactions between a New Mexico qualifying broker and a foreign broker with regard to real property inside and outside the state of New Mexico." 16.61.27.6 NMAC (1/1/2006).

> A real estate broker currently licensed by another state or licensing jurisdiction other than New Mexico, may engage in real estate activity in New Mexico as a foreign broker *provided that he/she enters into a transaction specific written agreement with a New Mexico licensed qualifying broker prior to commencing such real estate activity.* The foreign broker shall comply with all New Mexico laws, including but not limited to the real estate license law and real estate commission rules.

16.61.27.9(A) NMAC (12/31/2008) (emphasis added). A foreign broker who complies with these statutory and regulatory requirements may maintain an action for the collection of a commission under Section 61-29-16. *See Hayes v. Reeves*, 91 N.M. 174, 177, 571 P.2d 1177, 1180 (1977) (holding that a foreign broker may maintain an action for the collection of a commission under the former version of Section 61-29-16 "to the extent that a nonresident broker may, in a limited situation, share in a commission" under the Act).

**{24}** Plaintiff and Defendants never entered into a transaction-specific written agreement to share the commission on the sale of the ranch. Because Plaintiff violated the regulations governing the conduct of foreign brokers in this state, Section 61-29-16 bars Plaintiff from collecting a commission for its brokerage services.

**Whether Plaintiff Nonetheless May Recover Compensation Under Alternate Legal Theories**

**{25}** Plaintiff argues that, even though its breach of contract claims are barred by Section 61-29-16, the district court's award of damages nonetheless may be affirmed under the following alternate legal theories: promissory estoppel, breach of fiduciary duty, and unjust enrichment. RANM responds that Plaintiff "should not be compensated for performing any act that falls within the scope of [the Act] or [its] regulations."

**{26}** In *Bank of New Mexico v. Freedom Homes, Inc.*, 94 N.M. 532, 533, 612 P.2d 1343, 1344 (Ct. App. 1980), this Court considered whether an unlicensed real estate broker may maintain an action in quantum meruit for the reasonable value of his brokerage services. We noted that, to recover in quantum meruit, the plaintiff was required to rely on his unlicensed activities, which were unlawful under the Act. *Id.* at 534, 612 P.2d at 1345; *see* § 61-29-17 (providing that "[a]ny person who violates any provision of" the Act "is guilty of a misdemeanor"); § 61-29-17.2 (providing for the imposition of civil penalties against anyone found "to have acted without a license" in violation of the Act). Because a person cannot maintain an action based on unlawful or criminal conduct and because "[t]o give effect to this claim would be to . . . nullify plain statutory provisions to the contract[,]" we held that

8

the plaintiff was precluded from recovering compensation under the equitable doctrine of quantum meruit. *Bank of N.M.*, 94 N.M. at 534, 612 P.2d at 1345 (second alteration in original) (internal quotation marks and citation omitted); *see Desmet v. Sublett*, 54 N.M. 355, 357, 225 P.2d 141, 142 (1950) ("It is a well settled rule of law that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in a part, on a violation by himself of the criminal or penal laws.").

**{27}**  We conclude that Plaintiff is prohibited from recovering a commission or compensation for its unlicensed and unlawful brokerage services, regardless of the legal theory under which compensation is sought. Accordingly, we reverse the judgment of the district court awarding Plaintiff a two percent real estate commission on the sale of the ranch.

**{28}**  In addition to Defendant's claim that Plaintiff's cause of action was barred by Section 61-29-16, on appeal Defendants also contend that (1) the award of damages was not supported by substantial evidence; (2) the parties' oral agreement was unenforceable under the statute of frauds; (3) the oral agreement was not supported by consideration; (4) the oral agreement was indefinite and, therefore, unenforceable; (5) the district court improperly imposed personal liability on Miller; (6) the evidence was insufficient to establish an agreement with McGuire; and (7) Defendants' motion to disqualify the district court judge improperly was denied. Additionally, Plaintiff filed a cross-appeal, claiming that the district court improperly failed to award (1) pre-judgment interest under NMSA 1978, Section 56-8-3 (1983) and NMSA 1978, Section 56-8-4 (2004); and (2) post-judgment interest at the rate of fifteen percent under Section 56-8-4(A)(2). However, in light of our conclusion above, we need not reach Defendants' remaining claims. We also need not reach Plaintiff's cross-appeal regarding the calculation of pre- and post-judgment interest on the award of damages.

**CONCLUSION**

**{29}**  We conclude that Section 61-29-16 bars Plaintiff from recovering a real estate commission on the sale of the ranch because Plaintiff was acting as a broker without a valid New Mexico broker's license or a written foreign broker's agreement. The judgment of the district court is reversed.

**{30}**  **IT IS SO ORDERED**.

---

**LINDA M. VANZI, Judge**

**WE CONCUR:**

---

**JAMES J. WECHSLER, Judge**

9

**MICHAEL E. VIGIL, Judge**

**Topic Index for *PC Carter Co. v. Miller*, Docket No. 29,785**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-ES | Estoppel |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-AA | Agency, Agent |
| CM-FD | Fiduciary Duty |
| | |
| **GV** | **GOVERNMENT** |
| GV-LC | Licensing |
| GV-RA | Regulatory Authority |
| | |
| **PR** | **PROPERTY** |
| PR-BA | Brokers and Agents |
| | |
| **RE** | **REMEDIES** |
| RE-UE | Unjust Enrichment |